RAYNARD FREITAS, et al., Plaintiffs-Appellants, *v.* THE CITY & COUNTY OF HONOLULU, a municipal corporation, et al., Defendants-Appellees

NO. 6088

FEBRUARY 6, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

588

In this action, three brothers seek to recover damages from the City and County of Honolulu (City) and two police officers for injuries suffered from the shooting of the plaintiffs by a fourth brother. The plaintiffs appealed from summary judgment awarded to the defendants. We affirm.

The trial court had before it memoranda filed by plaintiffs and defendants setting forth substantially similar versions of the facts of the case. Although not presented in affidavits, the concurrence of the parties on the facts stated in the opposing memoranda brought these facts before the court as cross-admissions. It was thus undisputed that, during the times relevant to this case, plaintiff John Freitas (John) and the fourth brother, Melvin Jerry Freitas (Jerry) lived within a few hundred yards of each other in Waianae, Oahu. On November 24, 1973, Jerry drove the short distance to John's house, firing his rifle while driving. Upon his arrival, he terrorized and threatened several individuals. Upon learning of this, plaintiff Raynard Freitas (Raynard) rushed to John's house and Jerry departed. The Honolulu Police Department was then contacted and police officers Walter Aki and Leonard Seymour, co-defendants, responded. The officers were informed by the plaintiffs and by independent witnesses unrelated to and not connected with the Freitas family that Jerry had pointed a loaded rifle at several individuals, made threats to kill them, and terrorized the neighborhood in general; that Jerry had fired the rifle in the air while driving his car; that Jerry was armed with an unregistered handgun as well as the rifle; that Jerry had been convicted of crimes of violence in the past, and it was unlawful for him to own such a weapon; that Jerry had a history of mental instability; and that Jerry's reputation in the community was that he was a man with a propensity for violence. Raynard told the officers that Jerry had in his possession a rapid-fire automatic machine gun, capable of firing repeatedly with one pull of the trigger, as well as a policeman's revolver, and was told in response, by the officers, that he should report this matter to the prosecutor's office. The police officers made no arrest

and made only minimal further investigation. On January 10, 1974, each of the plaintiffs was shot and permanently injured by Jerry.

The depositions of the police officers and one of the persons present at the November 24 incident were on file when the summary judgment was entered, but do not appear to have been called to the attention of the trial judge or examined by him. We need not consider how far the trial judge was required to search out sealed depositions to which his attention was not directed, since in the view we take of the case no significant facts were added by the depositions to those presented in the memoranda. From the depositions, it appears that defendant Seymour was told by John that, following an argument, Jerry drove to John's house and threatened him with a rifle. The officer was told by Jerry that John had called him by phone, accused him of running John's wife off the road with his car and invited him to come over to his house to "beef", but that when he reached John's house John had changed his mind and didn't want to fight. Jerry represented to the officer that he did not own a rifle. Whether the officer went first to John's house or to Jerry's in the investigation is in conflict between the memoranda and the depositions, but in the view we take of the case is not material. It also appears that defendant Aki had knowledge of "misbehavior" between or involving John and Jerry and that "they were always having trouble", but nothing appears as to the nature of the incidents or the trouble.

The plaintiffs attempted to place the circumstances of the January affray before the trial court by unverified statements in counsel's memorandum in opposition to the motion for summary judgment. Although facts may be admitted in such memoranda, a party may rely in making or opposing a motion for summary judgment only on facts which are before the court as provided in Rule 56, H.R.Civ.P.[1]

---

[1] In their briefs, the plaintiffs describe the events of January 10, 1974, and the relationships of the brothers in much detail, with references which disclose that the major sources are depositions which were not filed until more than three months after the entry of the summary judgment from which this appeal is taken and two months after this appeal had been docketed in this court.

The plaintiffs argue that the facts before the trial court permitted a reasonable inference that, as a result of the conduct of the police officers, Jerry believed that he had nothing to fear from the police and the plaintiffs believed that their only recourse was to take matters into their own hands. It is also argued that the facts support an inference that the January shooting was the result of the existence of these beliefs in the minds of Jerry and the plaintiffs. By attributing the origin of these beliefs to the conduct of the officers on the preceding November 24, the plaintiffs attempt to link their injuries to the officers and, in turn, on the principle of *respondeat superior,* to the City. But, concededly, causation is not sufficient upon which to find liability unless a default is shown in the fulfillment of a duty owed by the officers to the plaintiffs. Reliance on any statutory duty of the officers to make an arrest and thus prevent the January shooting is expressly disclaimed in the briefs. Instead, the plaintiffs rely upon a duty on the part of the officers to exercise reasonable care for the safety of the plaintiffs, arising out of the foreseeability of danger to them under the circumstances then known to the officers.

Since the plaintiffs do not dispute its applicability, we will take for a starting point the generally accepted proposition that the failure of the police to provide protection is ordinarily not actionable. See, *e.g., Riss v. City of New York,* 22 N.Y.2d 579, 240 N.E.2d 860, 293 N.Y.S.2d 897 (1968). An exception to this rule has been recognized which imposes liability where police action has increased the risk of harm and there is negligence in providing protection against the enhanced danger. *Schuster v. City of New York,* 5 N.Y.2d 75, 154 N.E.2d 534, 180 N.Y.S.2d 265 (1958). Plaintiffs seek to fit this case into the exception. In order to do so, it is necessary to discover some circumstance, other than their official duty to preserve the peace and enforce the laws, the occurrence or existence of which created a duty owed by the police officers, or the City, or both, to take some affirmative action for the protection of the plaintiffs. It is also necessary for the plaintiffs to show that the affirmative action which was so owed was not taken and that, if it had been, the injuries which the

plaintiffs suffered would have been prevented.[2]

The instant case does not present either a necessity or an appropriate occasion for us to consider what circumstances, if any, will render actionable the failure of a municipality or its officers to provide police protection. All that appears from the record before us is that, on a single occasion, although with a background of some degree of unfriendly relations between them known to one of the officer defendants, Jerry had threatened John as well as others with a rifle and possessed other arms, and that the police had been informed of this occurrence, together with the facts that Jerry had been convicted of crimes of violence and had a history of mental instability and a reputation of a man with a propensity for violence. The circumstances of the January shooting were not before the trial court and there is no material in the record that would support the claim that the actions of the police in any way worsened the circumstances of the plaintiffs so that a duty to act further would arise.

We are unable to perceive what action might have been taken by the police officers which would have averted the harm to the plaintiffs, other than those actions which are incidental to the generalized duty of the police to apprehend offenders and maintain order. The plaintiffs concede that more is needed to support their claim. They have failed to show that entry of summary judgment for the defendants was error.

Affirmed.

*James Blanchfield* for Plaintiffs-Appellants.

*Charles A. Viviano*, Deputy Corporation Counsel (*Berton T. Kato*, Deputy Corporation Counsel, on the brief) for Defendants-Appellees.

---

[2] *See, generally,* Prosser on Torts, § 56 (4th ed. 1971); Note: Municipal Tort Liability for Failure to Provide Adequate Police Protection in New York State, 39 Albany L. Rev. 599 (1975).