CLIFFORD E. MILLER and ANNIE H. MILLER, Plaintiffs–Appellees, v. MAXIMO MANUEL, STEPHEN RAMOS MANUEL, LARRY KANAKAMAIKAI MANUEL, LOMBARD LUELLA MANUEL, FLORENCE MELE MAAFALA, LEONORA LEINAALA MANUEL, PETER GAUDENCIO MANUEL, LAMBERT HUEU MANUEL, VERONICA IWALANI KADOWAKI, CARLOS MANUEL, DANIEL KANIALA MANUEL, Defendants–Appellants, and FLORENCE MAHI MANUEL, et al., Defendants

NO. 14837

(CIV. NO. 9974)

NOVEMBER 19, 1991
Amended by Order Filed November 26, 1991

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE HUDDY, ASSIGNED BY REASON OF VACANCY

58

OPINION OF THE COURT BY HEEN, J.

This is Defendants–Appellants' (Appellants) second appeal from the denial of their motion for reconsideration of the lower

court's "Order Granting Motion to Enforce Settlement" (Order).[1,2,3] On December 20, 1989, this court issued a memorandum opinion dismissing the first appeal, *sua sponte*, for lack of appellate jurisdiction. On remand, the lower court entered a Rule 54(b), Hawai'i Rules of Civil Procedure (HRCP) (1980), certification of final judgment on August 27, 1990, and Appellants filed a notice of appeal on September 24, 1990. We vacate the Order and remand for further proceedings.

## I.

Plaintiffs–Appellees (Appellees), as alleged co–tenants with Appellants and others in a parcel of real property in Kalaoa, North Kona, on the island of Hawai'i, identified as Grant 991 to Kalimaonaona (Grant 991), initiated this action on October 3, 1984, to quiet title to the undivided interests and to partition Grant 991.

After the non–answering parties were defaulted, the court held a settlement conference on June 9, 1987, just prior to trial. The attorneys for the remaining parties and one *pro se* party, Barron Kanamu (Kanamu), attended the conference.[4] When an

---

[1] It appears that Defendants–Appellants (Appellants) and Defendant Florence Mahi Manuel (Florence Manuel) are siblings. Where appropriate, Appellants and Florence Manuel will be referred to collectively as the Manuel Defendants.

[2] Although he is named as an appellant in the notice of appeal and in the caption, Defendant–Appellant Carlos Manuel did not answer the complaint below, and his default was entered on January 9, 1987. On appeal, no argument is raised challenging the entry of default against Carlos. Consequently, Carlos Manuel is not included in the term Appellants.

[3] The names of Defendants–Appellants shown in the caption of the record on appeal do not conform to their names as shown in the complaint. In the caption of this opinion, we have conformed the Defendants–Appellants' names to those shown in the complaint.

[4] At that time, the Manuel Defendants were represented by Karen Radius, Esq., and Raymond Hasegawa, Esq. Hasegawa was present at the conference. It

agreement (Agreement) was reached, the trial was continued. One of those present prepared a handwritten memorandum setting forth the terms of the Agreement, which was executed by the parties present. The Agreement set aside an agreed upon number of acres in Grant 991 to each of the parties at the conference. The Agreement also provided that the parties would pay their "proportionate share of real property taxes paid, together with interest at a rate determined by the Ct." The terms of the Agreement will be discussed below in greater detail.

On September 19, 1988, Appellees filed a "Motion to Enforce Settlement" (ME). Attached to a memorandum accompanying the ME was a copy of the Agreement and of a stipulation (Stipulation), purportedly prepared in accordance with the Agreement and circulated among the parties by Appellees' attorney. However, the terms of the Stipulation differed from those of the Agreement. The pertinent terms of the Stipulation and the differences between it and the Agreement will be discussed below. The ME asked the court to enter an order approving the Stipulation and ordering Appellants to sign it or, in the alternative, to enter a judgment settling the parties' title claims in Grant 991 according to the Agreement's terms.

On October 17, 1988, Appellees filed a motion relating to the real property taxes (MRPT) previously paid and to be paid in the future on Grant 991. The MRPT asked the court to resolve the issue in accordance with the Agreement and (1) determine (a) the amount of interest payable to those parties who paid the real property taxes; (b) the proper allocation among the parties of the real property taxes previously paid and the accrued interest thereon; (c) the amount owed to each of the parties that paid the real property taxes by the non–paying parties; and (2) direct the parties to pay

---

appears that Defendants Florence Manuèl and Florence Maafala were also present at the conference.

their proportionate shares of any pending and future real property taxes assessed against Grant 991.

Both motions were heard on December 15, 1988, and the Order was entered on March 9, 1989. The Order incorporated the acreage allotments set forth in the Stipulation and directed the parties to pay their proportionate shares of the previously paid real property taxes, plus interest, and the real property taxes coming due in the future. The Order did not determine how much each non–paying party was supposed to pay as reimbursement, but did establish the interest rates to be paid on the reimbursement.

On March 15, 1989, Appellants filed a motion to reconsider the Order and to set an evidentiary hearing, which was denied in an order entered on May 1, 1989. Appellants argue on appeal that the lower court erred in (1) denying them an evidentiary hearing on the ME, and (2) denying the motion for reconsideration.

## II.

Before discussing the issues we deem it necessary to determine exactly who Appellants' counsel James S. Richards (Richards) represents and examine the applicability of the arguments raised in the briefs to the conflicting positions taken by Appellants in the court below.

## A.

At oral argument in this court, Richards asserted that he represented only Defendants–Appellants Maximo, Stephen, Larry, Lombard, Carlos, and Daniel Manuel. However, as indicated in note 2, *supra*, Carlos never appeared in the court below, filed no answer, and was defaulted on January 9, 1987. The Opening Brief does not challenge Carlos' default.

On November 29, 1990, the supreme court approved Richards' motion to withdraw as counsel for Defendants–Appellants Florence M. Maafala, Leonora R. Manuel, Peter

G. Manuel, and Lambert H. Manuel.[5]  As a result, they are unrepresented in this appeal and did not file any briefs.[6]

## B.

In the court below, Defendants–Appellants Maximo, Stephen, Larry, Lombard, and Daniel Manuel indicated at the hearing on the ME that they agreed with the acreage allotments in the Stipulation.[7]  Consequently, their position on that issue is contrary to that of the other Appellants.  Moreover, since the Order adopted the acreage allotments in the Stipulation, Maximo, Stephen, Larry, Lombard and Daniel have not been adversely affected by that part of the Order.[8]

However, in their brief Maximo, Stephen, Larry, Lombard, and Daniel attack the entire Order.  In response, Appellees' answering brief argues in support of the entire Order.  Thus, all the issues have been thoroughly discussed, and, since the appeal of Florence M. Maafala, Leonora R. Manuel, Peter G. Manuel, Veronica Iwalani Kadowaki, and Lambert H. Manuel was not dismissed for failure to file a brief, Rule 30, Hawai'i Rules of Appellate Procedure (1984), and since it will be necessary to a final disposition of this case on remand to consider their interests in Grant 991, the determinations of this opinion are deemed to apply to their appeal also.

---

[5] However, the opening brief was filed on December 18, 1990, by Richards as "Attorney for Defendants–Appellants." The brief did not indicate that Richards did not represent all Defendants–Appellants.

[6] It appears that Defendant–Appellant Veronica Iwalani Kadowaki is also unrepresented in this appeal.  She, too, did not file a brief.

[7] None of the other parties in the case noted any objections to the Motion for Enforcement or the motion relating to real property taxes.

[8] Maximo, Stephen, Larry, Lombard and Daniel joined Radius' opposition to the motion relating to real property taxes.  They have been adversely affected by the terms of the Order regarding the real property taxes.

## III.

We now discuss the standard to be applied in reviewing the Order.

### A.

Where the evidence in the record shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and cannot be set aside except on grounds that would justify rescission. *See Dowsett v. Cashman*, 2 Haw. App. 77, 625 P.2d 1064 (1981). " '[G]enerally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.' " *Id.* at 82, 625 P.2d at 1068 (quoting *In re Estates of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105, 1108 (1979)).

However, since very important rights are at stake in most cases, appellate courts must strive to ensure that the purported compromise agreement sought to be enforced is truly an agreement of the parties.

> A motion to enforce a settlement contract is neither ordinary nor routine. It is the modern counterpart of the olden practice involving supplemental pleadings and formal trial or hearing of the issue as thus developed. Its relative simplicity is a concession to the policy favoring settlements, but only to the extent that full and fair opportunities to prove one's points are substantially preserved.

*Autera v. Robinson*, 419 F.2d 1197, 1203 (D.C. Cir. 1969) (footnotes omitted).

The question is, what procedure should the court follow when deciding a dispute over the validity or enforceability of a compro-

mise settlement? Must the court hold an evidentiary hearing, or may it decide the question summarily? In *Dowsett, supra,* no evidentiary hearing was held; however, the compromise agreement at issue was made in open court, and there was no question it was a mutual agreement.

California and New York courts have held that motions to enforce disputed compromise agreements may be treated as motions for summary judgments. *See Mancina v. Hoar,* 129 Cal. App. 3d 796, 181 Cal. Rptr. 347 (1982); *Lieber v. Wexler,* 82 Misc. 2d 387, 369 N.Y.S.2d 992 (N.Y. Civ. Ct. 1975).

In *Mancina,* the court held

[t]hat a motion for summary judgment cannot be granted when, as here, a factual question is concerning [sic] the existence, validity and terms of the alleged settlement.

*Mancina,* 129 Cal. App. 3d at 797, 181 Cal. Rptr. at 348. The court stated further that

[a] motion to enforce settlement . . . must be denied *where it appears that there is a question of fact.* A contrary conclusion would deny a litigant due process of law.

*Id.* at 801, 181 Cal. Rptr. at 350 (emphasis added).

Federal courts have established the same principle. *Callie v. Near,* 829 F.2d 888 (9th Cir. 1987); *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386 (5th Cir. 1984); *Autera v. Robinson, supra.*

In light of those authorities, we will review the Order as if it were a summary judgment. Thus, the question is whether the evidence presented to the trial court indicated that there was no genuine issue of material fact and that as a matter of law the parties had entered into a valid compromise agreement. *Consolidated Amusement Co. v. Waikiki Business Plaza, Inc.,* 6 Haw. App. 312, 719 P.2d 1119 (1986). If not, the lower court should have either set the case for trial or at least held an evidentiary hearing

on whether there was a compromise agreement among the parties.[9, 10]

## B.

The moving party in a summary judgment proceeding has the obligation to show through affidavit, deposition, or other evidentiary materials, that there is no genuine issue of material fact. *First Hawai'ian Bank v. Weeks*, 70 Haw. 392, 772 P.2d 1187 (1989). In ruling on a motion for summary judgment, the alleged facts and the inferences logically drawn therefrom must be viewed in the light most favorable to the non–moving party. *Fernandes v. Tenbruggencate*, 65 Haw. 226, 649 P.2d 1144 (1982). Once the movant has satisfied the initial burden of showing that there is no genuine issue of material fact, the opposing party must come forward, through affidavit or other evidence, with specific facts showing that there is a genuine issue of material fact. *K.M. Young & Assoc., Inc. v. Cieslik*, 4 Haw. App. 657, 675 P.2d 793 (1983). "[S]ummary judgment must be used with due regard for its purpose and should be cautiously invoked so that no person will

---

[9] We reject Appellees' argument that Defendants had waived any right to an evidentiary hearing. The record shows that in an affidavit opposing the Motion for Enforcement, Radius stated that her clients wished to speak on their own behalf at the hearing. (*See infra* note 10.) We deem that to be a request to present testimony. Although her clients were not at the hearing, Radius stated to the court that her clients objected to the settlement and would like "to go to trial and have a full hearing of all the claims."

[10] Oral evidence is allowed on a motion for summary judgment under Rule 43(e), Hawai'i Rules of Civil Procedure (1990), which reads as follows:

> **Evidence on Motions.** When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions.

be improperly deprived of a trial of disputed factual issues." *McKeague v. Talbert*, 3 Haw. App. 646, 650, 658 P.2d 898, 903 (1983).

Courts will treat the documents submitted in support of a motion for summary judgment differently from those in opposition. Although they carefully scrutinize the materials submitted by the moving party to ensure compliance with the requirements of Rule 56(e), HRCP (1990), the courts are more indulgent towards the materials submitted by the non–moving party.   10A C. WRIGHT, A. MILLER AND M. KANE, FEDERAL PRACTICE AND PROCEDURE:   CIVIL § 2738 (1983) (WRIGHT AND MILLER).   This is because of the drastic nature of summary judgment proceedings, which should not become a substitute for existing methods of determining factual issues.  *Snider v. Snider*, 200 Cal. App. 2d 741, 19 Cal. Rptr. 709 (1962).

Affidavits in support of a summary judgment motion are scrutinized to determine whether the facts they aver are admissible at trial and are made on the personal knowledge of the affiant. Also, ultimate or conclusory facts or conclusions of law are not to be utilized in a summary judgment affidavit.  WRIGHT AND MILLER, *supra.*

## IV.

In support of the ME, Appellees submitted, *inter alia,* a memorandum, the Agreement, and the Stipulation. Additionally, an affidavit of counsel attached to the ME certified the authenticity of the documents.  In the Agreement, the Manuel Defendants are allotted 25.5 acres, Appellees are allotted 16.5 acres, and Defendant Joseph Mahi is allotted 4.2 acres. In the Stipulation, those allotments are reduced to 24.8415 acres, 16.0231 acres, and 4.0 acres, respectively.  Also, the Stipulation allots 1.0 acre to Defendant Rosalie Simeona (Simeona), who was not included in

the Agreement. In both documents the balance of the area of Grant 991 is allotted among the other parties. The memorandum in support of the ME does not explain the discrepancy between the Agreement and the Stipulation. *Per se*, the discrepancies between the two documents create a genuine issue as to whether there was a meeting of the minds as to the terms of either document.[11]

At the hearing, the court first orally denied the ME, indicating that it could not approve the Agreement, since it did not provide an allotment for Simeona, who was not in default but was not present at the June 9, 1987 conference. The court further stated there was no evidence in the record regarding the circumstances under which the Agreement was signed. The court was correct in not upholding the Agreement since, in our view, the parties' actions subsequent to June 9, 1987, outlined below in our discussion of Appellees' supplemental memorandum in support of the ME and MRPT, rendered the Agreement inoperative.

After the court's oral decision, Appellees' counsel orally moved for reconsideration, asserting that in further meetings among the parties after the June 9, 1987 agreement, Radius had agreed to the reduced acreage allotment for her clients.[12] The court

---

[11] Radius filed an affidavit opposing the Motion for Enforcement setting forth two bases for Appellants' opposition: (1) Appellants felt that they were pressured into accepting the June 9, 1987 settlement, and (2) the acreage allotted to them in the Stipulation was less than the acreage allotted under the memorandum. Radius' affidavit was almost entirely hearsay and did not create a genuine issue of material fact. *Waimea Falls Park, Inc. v. Brown*, 6 Haw. App. 83, 712 P.2d 1136 (1985).

[12] Appellees' counsel stated as follows:

MS. SHIMAZU: Your Honor, if I could orally move for reconsideration. If the issue is the change in acreage to make up for the necessary acreage, that was a mistake all of the parties made when they signed that June 9th agreement and it was discussed fully during the numerous settlement meetings that we had after June 9th when we were attempting to finalize the stipulation.

\* \* \*

granted the oral motion for reconsideration and took the matter under advisement, stating that the parties could submit supplemental materials.

On December 23, 1988, Appellees submitted a supplemental memorandum in support of the ME, a copy of the Stipulation signed by Defendant Rosalie Simeona, other documentary material, and an affidavit of Appellees' counsel attesting to the authenticity of the documents submitted and averring "that the factual allegations contained [in the supplemental memorandum] are true to the best of [her] knowledge."

In the supplemental memorandum, Appellees' counsel described the June 9, 1987 settlement conference and the acreage allotment that resulted, as memorialized in the Agreement. The memorandum also stated that after the June 9, 1987 conference, it was discovered that (1) Grant 991 contained only 57.346 acres, not 57.7 acres as allotted in the Agreement; and (2) nothing had been allotted to Simeona, who had not been defaulted but did not attend the conference. Thereafter, the parties met to resolve the problems raised by those two discoveries. The memorandum states that on November 19, 1988, at a meeting attended by all the parties personally or by their counsel, the parties reached an agreement on a new acreage allotment. However, the parties were not able to settle on how to apportion the reimbursement of the parties who had paid the real property taxes.[13] Nevertheless, Appellees prepared and circulated the Stipulation setting forth the new acreage allocations for Appellees, the Manuels, Mahi, and

---

The issue was brought to all of the parties and discussed. ... [D]iscussion was held to figure out how [to] allocate or make up the shortage and at that time counsel for the Manuels, Joe Mahi and the Millers agreed that because they were the largest property holders they would take up the shortage.

[13] The record shows that the real property taxes had been paid over the years by Appellees, Defendant Joseph Mahi, and Defendant Florence Mahi Manuel.

Rosalie and providing for each party to pay a proportionate share of the real property taxes.[14] The only party to sign the Stipulation was Rosalie.

The supplemental memorandum *per se* is not sufficient to support a summary judgment. *Freitas v. City & County*, 58 Haw. 587, 574 P.2d 529 (1978). It may be argued, however, that the supplemental memorandum and Appellees' counsel's affidavit, in which she avers that the factual allegations contained in the supplemental memorandum are true "to the best of her knowledge" and that she is competent to testify to those facts, considered together, are sufficient to satisfy the requirements of Rule 56. The argument is without merit.

First, in *Freitas*, the supreme court stated that "[a]lthough facts may be admitted in such memoranda, a party may rely in making or opposing a motion for summary judgment only on facts which are before the court as provided in Rule 56, H.R.Civ.P." *Id.* at 589, 574 P.2d at 531 (footnote omitted). In our view, *Freitas* requires stricter adherence to the manner in which proof is presented in a summary judgment proceeding than was used by Appellees here.

Second, Appellees' counsel's affidavit avers that the factual allegations of the supplemental memorandum are true. However, she does not state in her affidavit what are the factual allegations of the supplemental memorandum. The court should not be required to comb through the supplemental memorandum to determine which statements are argument and which are factual allegations.[15] *See Munoz v. Yuen*, 66 Haw. 603, 670 P.2d 825 (1983).

---

[14] In the letter transmitting the Stipulation, Appellees' counsel indicated that Radius would file a motion regarding the back tax issue. Radius did not file any motion, apparently because of difficulties with her clients.

[15] The use of an attorney's affidavit to support a motion for summary judgment has been strongly criticized. *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342 (5th Cir. 1958).

Third, careful examination of the supplemental memorandum reveals that, with respect to the basic question of whether or not Appellants agreed with the Stipulation's acreage allotment, its allegations do not satisfy the strict scrutiny required of the movant's documents. Although the supplemental memorandum states that Appellees' counsel, " with the cooperation of " Appellants' then counsel, made arrangements to "reallocate the distribution," it does not specifically allege that Appellants' attorneys agreed to the final reallocation.[16]

Consequently, even construed together, the supplemental memorandum and the affidavit are not sufficient to support the Order. Thus, Appellants' failure to file any supplemental materials is not fatal to them, since Appellees' materials were not legally adequate. *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342 (5th Cir. 1958).

## V.

Appellees assert that throughout the period after November 19, 1988, when Appellees' counsel was attempting to get the Stipulation finalized and signed, Appellants never objected to or indicated disagreement with their allotment. Therefore, Appellees argue that Appellants should be barred by laches from now attacking the Stipulation. We disagree.

In light of the entire record, the fact that Appellants failed to object to the new acreage apportionment while the parties were attempting to resolve the real property tax issue, viewed most favorably for Appellants, indicates they were concerned with negotiating a "package deal" where all disputed issues were resolved. Until such a settlement was reached, Appellants were

---

[16] In light of our disposition of this case, we do not reach the argument raised by Appellants that Radius was not authorized to enter into the settlement agreement.

not required to voice objection to the allotment schedule. Consequently, in our view, they were not barred by laches from raising the issue when the ME and MRPT were filed.

Appellees argue also that Appellants should be estopped from denying their concurrence in the Stipulation's terms because Appellees gave up an early trial of all the issues, which was scheduled for shortly after the June 9, 1987 settlement conference. The argument is without merit.

The trial was continued on the basis of the Agreement. However, subsequent events proved the Agreement was invalid and inoperative. Appellees' change of position came before the Stipulation's terms were allegedly agreed to by Appellants.

## VI.

Since the ME was improvidently granted, the lower court abused its discretion in denying the motion for reconsideration. Moreover, we note that this case involves title to land, and the record indicates a highly confused state of affairs in the lower court due to the death of counsel of one of the non–appealing parties, the number of parties to the proceeding, the apparent recalcitrance and non–cooperation of some Appellants with their counsel, the discovery of the error in the acreage alloted in the Agreement, and the need to provide for Rosalie Simeona. The lower court would have been better advised to either set the matter for trial or hold a hearing on the validity of the compromise agreement.

## CONCLUSION

The Order is vacated, and this matter is remanded. On remand the lower court should either set the matter for trial or hold an

evidentiary hearing on the question of whether there was a compromise agreement.

*James S. Richards* for defendants–appellants.
*Paul A. Lynch* (*Rachel T. Shimazu* on the brief; Case & Lynch, of counsel) for plaintiffs–appellees.