938 P.2d 1196

**TRADEWIND INSURANCE COMPANY, LTD., and Island Insurance Company, Ltd., Plaintiffs–Appellees,**

v.

**Rosemary H. STOUT, Defendant–Appellant,**

and

**Romel Castro, Abraham Castro, and Marcelina Castro, Defendants.**

**No. 16697.**

Intermediate Court of Appeals of Hawai'i.

May 2, 1997.

Arthur Y. Park and Gordon Kim, Park Kim & Yu, on the briefs, Honolulu, for defendant-appellant.

James Kawashima and George Quillin, Watanabe, Ing & Kawashima, on the brief, Honolulu, for plaintiffs-appellees.

Before BURNS, C.J., ACOBA, J., and Circuit Judge WONG in place of KIRIMITSU, J., Recused.

ACOBA, Judge.

We hold in this appeal by Defendant–Appellant Rosemary H. Stout (Stout) from a November 17, 1992 first circuit court (court)

order which became final by stipulated order on September 10, 1993 and granted the motion for summary judgment and declaratory relief of Plaintiff–Appellee, Tradewind Insurance Company, Ltd. (Tradewind), that following the conviction of Tradewind's insured, Romel Castro (Romel), for attempted second degree murder of Stout, Stout was collaterally estopped from litigating the issue of whether Romel "expected or intended" to cause Stout "bodily injury."

## I.

On October 28, 1991, Tradewind and Island Insurance Company, Ltd. (Island)[1] filed a complaint for declaratory judgment[2] against Romel, Romel's parents, Abraham and Marcelina Castro (hereinafter referred to collectively as the Castros), and Stout, as Defendants. The complaint sought, among other relief, a judgment declaring that Tradewind, the insurer under the Castros' homeowner's insurance policy (the homeowner's policy), and Island had no duty to defend or indemnify their insured, Romel[3] and the Castros, or to pay Stout benefits for personal injuries suffered when Stout was shot by Romel on June 30, 1988. The complaint alleged that in a lawsuit for such personal injuries Stout had claimed that Romel "negligently and/or grossly negligently and/or recklessly and maliciously assaulted [her]" and that the Castros "knew [Romel] had threatened to cause bodily injury to teachers but failed to warn [her] of [t]his threat." Tradewind alleged, however, that Stout's injuries constituted bodily injury "expected or intended by the insured" or "personal injury arising out of the willful violation of a penal statute ... committed by or with the knowledge or consent of any insured," excluded from coverage under the homeowner's policy.

On September 3, 1992, Tradewind and Island moved for summary judgment on their complaint. Stout opposed the motion and argued that her injuries were covered under the homeowner's policy because Romel was under the influence of drugs at the time of the shooting and unable to rationally govern his conduct. Stout thus contended that Romel did not "expect or intend" to cause Stout bodily harm or to willfully violate a penal statute.

On November 17, 1992, the court granted in part and denied in part summary judgment, ruling, in pertinent part, that (1) the motion as to Romel was granted; (2) Tradewind and Island[4] had no duty to defend or indemnify Romel; (3) the motion as to the Castros was denied. As a result, the court also ruled that Stout was not entitled to benefits under the homeowner's policy.

Ultimately, only Stout filed an appeal and her appeal pertains only to the summary judgment in Tradewind's favor, which relieved it from a duty to defend or indemnify Romel and the potential obligation to pay Stout benefits under the homeowner's policy.[5]

---

1. Island Insurance Company, Ltd. (Island) was the insurer under an automobile insurance policy issued to Abraham and Marcelina Castro (hereinafter referred to collectively as the Castros).

2. With reference to declaratory judgments, Hawai'i Revised Statutes (HRS) § 632–1 (1993) states in pertinent part:

    Relief by declaratory judgment may be granted in civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right or privilege by *an adversary party who also has or asserts a concrete interest therein*, and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.
    (Emphasis added.)

3. Tradewind Insurance Company, Ltd (Tradewind) alleged Romel Castro (Romel) was a resident of the Castros' household and apparently, therefore, an insured under the Castros' homeowner's policy.

4. Island was not named as a party on appeal.

5. On December 15, 1992, Defendant–Appellant Rosemary H. Stout (Stout) appealed. However,

## II.

A summary judgment order is reviewed on appeal under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting, Inc.*, 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Consequently, we must determine whether viewing all the evidence in a light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party has clearly demonstrated that it is entitled to judgment as a matter of law. *Id.;* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c).

Initially, we note that only Exhibit C of Tradewind's motion is properly certified under HRCP Rule 56(e).[6] None of the other exhibits submitted by Tradewind,[7] by Romel and the Castros,[8] or by Stout,[9] were properly sworn to or certified. *See Fuller v. Pacific*

---

because the summary judgment failed to resolve all issues of coverage as to the Castros, and was neither certified under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) nor taken as an interlocutory appeal under HRS § 641–1(b), the appeal was premature. On September 1, 1993, after all briefs had been submitted by the parties, the Hawai'i Supreme Court dismissed the appeal for lack of appellate jurisdiction.

To cure this jurisdictional problem, the parties obtained stipulated orders from the trial court on September 10, 1993, disposing of all remaining claims against all parties. In the first stipulation, all the parties to the case agreed that (1) the November 17, 1992 summary judgment order was dispositive of all claims against Stout made by Tradewind and Island and Stout's cross-motion for summary judgment as to Tradewind was denied by the court, and (2) Stout was "accordingly entitled to recover no benefits under either [Tradewind's] homeowner's insurance policy or [Island's] automobile insurance policy." In the second stipulation, all the parties to the case agreed that all of Tradewind's and Island's claims against the Castros were dismissed with prejudice.

Attaching the above stipulations as appendices, Stout filed a motion on September 13, 1993, for reconsideration of the Hawai'i Supreme Court's September 1, 1993 order dismissing her appeal for lack of appellate jurisdiction. On September 24, 1993, the supreme court granted the motion for reconsideration in part, and temporarily remanded the case to the lower court in order for Stout to supplement the record with the necessary orders and to file a supplemental statement of jurisdiction.

On October 15, 1993, Stout filed the supplemental statement of jurisdiction. Subsequently, the case was assigned to the Hawai'i Intermediate Court of Appeals.

6. According to HRCP Rule 56(e):

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated there-

in. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.... When a motion for summary judgment is made and supported [by affidavit or certified copies], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.

Exhibit C complies with HRCP Rule 56(e) because it is a certified copy of the court's judgment, sentencing Romel to life imprisonment with the possibility of parole.

7. Exhibit A is a copy of Romel's indictment for second degree attempted murder. Exhibit B is a copy of the jury's verdict, finding Romel guilty as charged. Exhibit D and E are excerpts from the homeowner's policy. Exhibit F is a police record containing a statement from Maria Lopez, one of Romel's classmates. Exhibit G is a pictograph allegedly representing Romel's threat to kill Stout. Exhibit H is a Honolulu Police Department (HPD) diagram of the shooting scene. Exhibit I is a transcript of a taped interview of Wayne Asam, Jr., another of Romel's classmates. Exhibit J is an HPD "closing report." Exhibit K is an excerpt from Abraham Castro's deposition.

8. Exhibit A is a copy of a deposition upon written interrogatories for the Castros' homeowner's policy. Exhibit B is a copy of the order denying the Castros' motion for summary judgment filed on March 2, 1992.

9. Exhibit 1 is a copy of Romel's criminal jury verdict and judgment. Exhibit 2 is a copy of the homeowner's policy. Exhibits 3 and 4 are excerpts from the criminal trial transcript of Romel's testimony. Exhibit 5 is an excerpt from the trial testimony of Dr. Carol A. Brown, a psychiatrist. Exhibit 6 is an excerpt from the trial testimony of Craig H. Robinson, a clinical psychologist. Exhibit 7 is an excerpt from the trial testimony of Dr. Jack S. Annon, a licensed clinical psychologist and board certified forensic psychologist. None of the excerpts are certified or sworn to by a court reporter or other qualified person.

*Medical Collections, Inc.,* 78 Hawai'i 213, 891 P.2d 300 (App.1995) (holding that mere statements in affidavits referring to exhibits do not authenticate exhibits referred to unless affidavit indicates affiant was qualified to swear to or certify exhibits); *Wolfer v. Mutual Life Ins. Co.,* 3 Haw.App. 65, 641 P.2d 1349 (1982) (documents unsworn and uncertified to cannot be considered on a motion for summary judgment); *Munds v. First Ins. Co.,* 1 Haw.App. 104, 614 P.2d 408 (1980) (holding that copy of complaint attached to motion for summary judgment, neither sworn to nor certified, violated HRCP Rule 56(e)); *DeMund v. Lum,* 1 Haw.App. 443, 620 P.2d 270 (1980) (holding that provision of rule requiring that documents forming basis for motion for summary judgment should be either certified or sworn to is mandatory).

However, we may refer to certain material facts alleged in the complaint which were admitted in the Defendants' answers and are thus not in dispute. *Cf. Han v. Yang,* 84 Hawai'i 162, 931 P.2d 604 (App.1997) (holding that "factual assertions in a complaint are judicial admissions that bind a party and that the admitted facts in a complaint are removed from the field of controversy").

The following were such facts in this case.

On June 30, 1988, Romel shot Stout while she was teaching a summer school English class at Aiea High School in Honolulu on the island of O'ahu. At the time of the shooting, Romel was eighteen years old and living with his parents. Following the shooting, Romel was indicted for attempted second degree murder and a firearms violation.

On February 2, 1990, Romel was convicted by a jury of attempted second degree murder pursuant to HRS §§ 705–500 (1993), 707–701.5(1) (1993) and 706–656 (Supp.1988), and a firearms violation pursuant to HRS § 134–6 (Supp.1988). On April 24, 1990, Romel was sentenced to life imprisonment with the possibility of parole.

On June 26, 1990, Stout filed a civil complaint for personal injuries against Romel, the Castros, and various Doe defendants.

There is also apparent agreement, as indicated in the parties' memoranda and in their statements at the summary judgment hearing, regarding the language of the homeowner's policy provisions and the defense of drug influence used by Romel at his criminal trial. *See Freitas v. City & County of Honolulu,* 58 Haw. 587, 588, 574 P.2d 529, 530 (1978) ("The trial court had before it memoranda filed by plaintiffs and defendants setting forth substantially similar versions of the facts of the case. Although not presented in affidavits, the concurrence of the parties on the facts stated in the opposition memoranda brought these facts before the court as cross-admissions."); *Gonsalves v. First Ins. Co. of Hawaii, Ltd.,* 55 Haw. 155, 161, 516 P.2d 720, 724 (1973) ("[A]dmissions in the brief of the party opposing the motion for summary judgment may be used in determining that there is no genuine issue as to any material fact, since they are functionally equivalent to admissions on file, which are expressly mentioned in [HRCP] Rule 56(c).") (citation and internal quotation marks omitted).

Accordingly, there are no genuine issues as to any material facts. The questions posed before the court on summary judgment and before us on appeal are questions of law. They are (1) whether Romel's conduct fell within an exclusionary clause in the homeowner's policy, and (2) if so, whether, as a result of Romel's criminal conviction, Stout was collaterally estopped from litigating the question of whether her bodily injuries were or were not "expected or intended" by Romel.

We conclude that Romel's conduct did fall within the homeowner's policy clause which excluded coverage for bodily injury "expected or intended" by the insured[10] and that the doctrine of collateral estoppel bars Stout from litigating that issue.

---

10. Because we conclude that Romel's actions fell under the exclusionary clause which prevents recovery for "expected or intended" bodily inju-

ry, we do not find it necessary to discuss the exclusionary clause referring to "personal injury

III.

A.

1.

The homeowner's policy issued to the Castros by Tradewind provided that:

[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable[.]

The word "occurrence" is defined in the homeowner's policy as "an accident, including exposure to conditions, which results, during the policy period" in "bodily injury" or "property damage." The homeowner's policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." "Bodily injury" as defined, thus includes "death."

The homeowner's policy also included various exclusions. The relevant exclusion we examine provides as follows:

SECTION II  EXCLUSIONS

1. Coverage E—Personal Liability and Coverage F—Medical Payment to Others do not apply to bodily injury or property damage:

a. *which is expected or intended by the insured* [.]

(Emphasis added.)

In *Hawaiian Ins. & Guar. Co., Ltd. v. Blanco,* 72 Haw. 9, 804 P.2d 876 (1990), the Hawai'i Supreme Court construed an identical exclusionary clause. The supreme court concluded that when an insured fired a gun in the direction of his neighbor with the intent to frighten that person, it was reasonably to be expected by the insured that some physical injury would result. *Id.* at 18, 804 P.2d at 881. In upholding denial of insur-

arising out of the willful violation of a penal

ance coverage, the supreme court reasoned that although the insured intended only to scare the neighbor, "[t]hat physical injury might result from such an action is certainly something which a reasonable man in the [insured's] position should have anticipated and expected." *Id.* Hence, under the *Blanco* rationale, Romel would not be afforded coverage if Romel had intended to cause Stout's death. That Romel had so intended was seemingly established in the criminal trial.

2.

In the criminal trial, Romel was tried for attempted second degree murder and a firearms violation. The elements of attempted second degree murder, as set forth in HRS §§ 705–500 and 707–701.5(1), are as follows:

§ 705–500  **Criminal attempt.**  (1) A person is guilty of an attempt to commit a crime if the person:

. . . .

(b) *Intentionally engages in conduct* which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person *intentionally* engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

§ 707–701.5  **Murder in the second degree.**  (1) Except as provided in section 707–701 [murder in the first degree], a person commits the offense of murder in the second degree if the person *intentionally* or knowingly causes the death of another person.

(Emphases added.)

Accordingly, a judgment of attempted second degree murder would embody the jury's

statute."

finding that the defendant intended[11] to cause the death of another person. Applied to the admitted facts here, then, the judgment of attempted second degree murder established beyond a reasonable doubt[12] that Romel *intended* to cause Stout's death.

### B.

In opposition to Tradewind's motion for summary judgment, Stout submitted extensive materials[13] attempting to raise a genuine issue of material fact as to whether Romel's drug use vitiated the intentional state of mind required for a conviction of attempted second degree murder. This issue, however, had already been comprehensively litigated at the criminal trial.

At the criminal trial, Romel testified that during his junior year of high school he began taking the drug crystal methamphetamine (crystal meth). He admitted that he voluntarily used crystal meth on a regular basis and that he was "hooked" on the drug. He reported that every day he went to summer school he was "high" on crystal meth. The crystal meth made him feel paranoid. Romel believed that Stout was "picking on [him]" in class. Romel testified that on the day of the shooting he had voluntarily and willingly used crystal meth prior to going to

school. Furthermore, Romel stated that he did not know what he intended to do with the gun that day and did not know why he shot Stout.

In addition, expert medical testimony was admitted to describe the effects of crystal meth. Dr. Carol A. Brown (Dr. Brown), a psychiatrist, testified that users of crystal meth "develop a paranoid psychosis" which makes them "appear as if they may be a paranoid schizophrenic." When smoking large quantities of crystal meth, a person becomes very paranoid and delusional. Dr. Brown explained that if a person is experiencing paranoia, "[t]hey think other people don't like them or other people are talking about them or other people are out to get them, [or] other people are putting them down." At defense counsel's request, Dr. Brown conducted a psychiatric evaluation of Romel. She opined that Romel's actions evidenced that he was experiencing a "severe paranoid hallucinatory or persecutory state." Moreover, Romel had gotten to the point of "absolute desperation" and "felt that he had no recourse but to try and kill [Stout], kill the object of his pain."

In Dr. Brown's opinion, Romel was addicted to crystal meth at the time of the shooting and that it "was 99.9 percent that he was not

---

**11.** HRS § 702–206 (1993) sets forth the following definition of "intentionally":
   (1) "Intentionally."
   (a) A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct.
   (b) A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.
   (c) A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

**12.** HRS § 701–114 (1993) sets forth the burden of proof in criminal trials:
   **§ 701–114 Proof beyond a reasonable doubt.**
   (1) Except as otherwise provided in section 701–115 [Defenses], no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
   (a) Each element of the offense;
   (b) *The state of mind required to establish each element of the offense;*

   (c) Facts establishing jurisdiction;
   (d) Facts establishing venue; and
   (e) Facts establishing that the offense was committed within the time period specified in section 701–108.
   (2) In the absence of the proof required by subsection (1), the innocence of the defendant is presumed.
   (Emphasis added.)

**13.** The essential aspects of Romel's defense are set forth in Stout's memorandum in opposition to Tradewind's motion for summary judgment, which were not contested by Tradewind at the hearing. We include here additional matters set forth in the transcripts attached as exhibits to Stout's memorandum not objected to by Tradewind and accepted by the court, so that we may illustrate the extensive evidence submitted by Romel in support of his defense. Even considering such evidence, summary judgment must still be upheld.

able to choose to stop" taking it. Dr. Brown concluded "from knowing [Romel's] family background and his history," she "doubt[ed] that he would have shot [Stout] had he not been under the influence of" crystal meth.[14]

Dr. Craig Robinson (Dr. Robinson), a clinical psychologist with experience evaluating people who have been under the influence of crystal meth, also rendered expert testimony with regard to Romel's mental state. After talking with Romel and Romel's mother about Romel's behavior prior to the shooting, Dr. Robinson concluded that Romel was exhibiting behavior "consistent with the behavior of someone who is abusing crystal meth." Having seen "no history of past aggressiveness or violence," Dr. Robinson deduced that "the likelihood of [Romel] having committed [the shooting] without some kind of drug influence would have been negligible, minimal." Although Dr. Robinson could not say that crystal meth caused Romel to "explode" on the day of the shooting, he did assert that based on the information he had been given, crystal meth "was a major, major contributing factor, if not the causal one of what [Romel] did[.]"

Thus, the jury in the criminal case had to determine, taking into consideration the effect of Romel's drug use, whether or not Romel formed the intent to kill Stout. The jury convicted Romel of attempted second degree murder. Therefore, it found that despite his drug use, Romel had formed the specific intent to kill Stout.

■ The question, then, is whether the finding necessarily embodied in the criminal judgment, that beyond a reasonable doubt Romel intended to cause Stout's death, should be given preclusive effect in the subsequent declaratory judgment action, the purpose of which was to determine whether Stout's injuries were "intended or expected"

by Romel. We believe that under the doctrine of collateral estoppel it should.

## IV.

■ The doctrine of collateral estoppel "precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies...." *Ellis v. Crockett,* 51 Haw. 45, 55–56, 451 P.2d 814, 822 (1969); *see also United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). The doctrine is intended to protect litigants from the burden of relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Found.,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971). Collateral estoppel is a bar to relitigation of an issue when the following three-prong test is satisfied:

> (1) the issue decided in the prior suit is identical to the issue presented in the action in question; (2) there was a final judgment on the merits in the prior suit; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior suit.

*SHOPO v. Soc. of Professional Journalists,* 83 Hawai'i 378, 400, 927 P.2d 386, 408 (1996) (citing *Bush v. Watson,* 81 Hawai'i 474, 480, 918 P.2d 1130, 1136 (1996)); *see also State Farm Fire and Casualty v. Poomaihealani,* 667 F.Supp. 705, 706 (D.Haw.1987).

We believe the collateral estoppel three-prong test has been met in this case.

## A.

According to the first prong, it is necessary that the issue decided in the first action,

---

14. The State of Hawai'i's expert in forensic psychology, Dr. Jack S. Annon (Dr. Annon), agreed with Dr. Carole A. Brown's conclusion that at the time of the shooting Romel was suffering from paranoia and delusions. In addition, Dr. Annon stated that Romel's state of mind "was a classic picture of focused delusion." Dr. Annon explained that "focused delusion is not just paranoia that people are against [you] ... but ... [you] focus[] on one person and that that person is the one responsible for everything and right or wrong[,] everything kind of comes down on that one person."

the criminal trial, be identical to the issue to be decided in the current declaratory action. The issue in the criminal trial common to the declaratory judgment action is whether in light of evidence of his drug use, Romel intentionally sought to cause Stout's death.

Tradewind brought the declaratory action to determine whether the homeowner's policy covered Romel's shooting of Stout. In order to determine whether the shooting fell under the homeowner's policy exclusion, the same issue presented in the criminal case must be resolved in the declaratory action: whether Romel intended to cause Stout "bodily injury."[15] Not surprisingly then, Stout presents the same argument which was made in the criminal trial; that is, that Romel did not form the intent to kill Stout because he was under the influence of crystal meth. Hence, both the criminal case and the declaratory action involve the identical issue of whether, while under the purported influence of crystal meth, Romel was able to form the intent to kill Stout.

### B.

The second prong of the test requires that there be a final judgment on the merits in the first action regarding the issue involved. As set forth *supra*, there was extensive evidence presented in support of Romel's lack of intent defense based on drug use. Nevertheless, a jury found Romel guilty of attempted second degree murder. Consequently, Romel's conviction was the product of a full trial on the merits and conclusively established that he intended to cause Stout's death. *Cf. Blanco*, 72 Haw. at 17, 804 P.2d at 880 (holding conviction based on no contest plea is not conclusive evidence of commission of crime in subsequent civil action).

### C.

### 1.

The third prong requires privity with a party to the prior suit. In the collateral estoppel context, "privity signifies that [the] relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon [the] other, although [the] other was not party to [the] lawsuit." *Black's Law Dictionary* 1199 (6th ed.1990). The traditional concept of privity reflected the basic premise that parties to a prior action are bound and nonparties are not bound to the outcome of a related lawsuit. However, the concept of privity or mutuality has expanded to bind nonparties. 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction*, § 4449 (1981). The Hawai'i Supreme Court noted in *Bush*, 81 Hawai'i at 480, 918 P.2d at 1136 (quoting 18 Wright, Miller & Cooper, *supra* § 4449, at 418–19 (1981) and Supp. (1995) at 331):

> As the preclusive effects of judgments have expanded to include nonparties in more and more situations, however, it has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper. As to privity, current decisions look directly to the reasons for holding a person bound by a judgment.

*See also Morneau v. Stark Enters., Ltd.*, 56 Haw. 420, 539 P.2d 472 (1975) (holding rule of privity or mutuality has been abandoned in the defensive use of collateral estoppel).

### 2.

■ It appears, then, that although Tradewind was not a party to the criminal action, it could collaterally estop Romel, its insured, from relitigating the issue of his intent to cause Stout's death because that issue had already been litigated and adversely decided against him in the criminal case.

In the past, courts have cited various considerations to explain why they were reluctant to give preclusive effect to a criminal conviction, including: "absence of mutuality in the second suit;" "failure or inadequacy of legal representation;" *Travelers Ins. Co. v. Thompson*, 281 Minn. 547, 163 N.W.2d 289,

---

**15.** As indicated *supra*, "bodily injury" as defined  in the homeowner's policy includes death.

292 (1968), *appeal dismissed* and *cert. denied, Thompson v. Travelers Ins. Co.,* 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969); and "dissimilarity of parties, issues, [and] procedures." Annotation, *Conviction or acquittal as evidence of the facts on which it was based in civil action,* 17–18 A.L.R.2d Supp. 1287 § 1, at 1289 (1987).

This view, however, has given way, under certain circumstances, to preclusive use of criminal convictions in subsequent civil actions. "The traditional rule was that the conviction was irrelevant in any subsequent civil action. This rule gave way to decisions that permitted the conviction to be offered in evidence. Evidentiary use of the conviction has in turn been transformed into preclusion." 18 Wright, Miller & Cooper, *supra* § 4474, at 750; *see also Scott v. Robertson,* 583 P.2d 188 (Alaska 1978); *Travelers,* 163 N.W.2d at 289.

■ Preclusive use of a criminal conviction has been extended to allow a nonparty to a criminal action to assert collateral estoppel against the criminal defendant in a subsequent civil action. *Travelers Indem. Co. v. Walburn,* 378 F.Supp. 860, 868 (D.C.D.C. 1974) (holding that where defendant was accorded "ample opportunity" to "present evidence and argument relating to his actions" and defendant was found guilty in his criminal jury trial for second degree murder, he is collaterally estopped from denying that he expected or intended the death in a subsequent declaratory action brought by insurer); *Bressan Export–Import Co. v. Conlew,* 346 F.Supp. 683, 685 (E.D.Pa.1972) (holding "that the lack of identity of parties, i.e., the fact that this action, as opposed to the criminal action was instituted by a private party, does not preclude summary judgment"); *Hurtt v. Stirone,* 416 Pa. 493, 206 A.2d 624 (1965) (holding victim could utilize defendant's conviction for extortion in subsequent civil trial to recover the money allegedly paid as a result of extortionate threats), *cert. denied, Stirone v. Hurtt,* 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965); *United States v. Salvatore,* 140 F.Supp. 470, 472 (E.D.Pa.1956)

(holding defendant was collaterally estopped from relitigating issues adjudicated in criminal case in subsequent civil suit brought by United States under false claims statute); *Newman v. Larsen,* 225 Cal.App.2d 22, 36 Cal.Rptr. 883, 884–85 (1964) (holding victim could utilize defendant's criminal conviction for assault and battery in subsequent civil action for damages to conclusively establish defendant's intent to injure); *Travelers,* 281 Minn. 547, 163 N.W.2d 289 (holding that conviction of beneficiary to life insurance policy in prior criminal case was conclusive, under doctrine of collateral estoppel, as to the result of subsequent civil action brought to determine beneficiary's rights to proceeds of policies on life of his deceased wife); *Casey v. Northwestern Sec. Ins. Co.,* 260 Or. 485, 491 P.2d 208, 210 (1971) (holding that "there is now no mutuality of estoppel argument to prevent the insurer, a stranger to the criminal proceeding, in the action brought by the insured against it, from contending that the insured is estopped to assert that he did not intentionally injure [victim] because that issue was decided against the insured in his criminal trial.").

■ In the instant action, however, we are faced with a further extension of the collateral estoppel doctrine because Tradewind, a nonparty to the prior criminal trial, seeks to use collateral estoppel to preclude Stout, who was also a nonparty to the criminal case, from relitigating the issue of Romel's intent in the declaratory action. In determining whether this is a proper extension of the collateral estoppel doctrine, we must look "to the reasons for holding [Stout] bound by [the criminal] judgment." *Bush,* 81 Hawaiʻi at 480, 918 P.2d at 1136.

### 3.

#### a.

We believe it appropriate under the facts of this case to extend the preclusive effect of collateral estoppel to bar Stout from relitigating the issue of Romel's intent. We do so based upon the proposition that under

certain circumstances, an injured person may stand in the shoes of the insured in subsequent civil litigation involving identical issues fully litigated and determined on the merits in a prior criminal trial.

In adopting this position, we find the Idaho Court of Appeals' case, *Safeco Ins. Co. of Am. v. Yon*, 118 Idaho 367, 796 P.2d 1040 (App.1990) to be particularly instructive. *See also Aetna Casualty & Sur. Co. v. Jones*, 220 Conn. 285, 596 A.2d 414 (1991); *New Jersey Mfr. Ins. Co. v. Brower*, 161 N.J.Super. 293, 391 A.2d 923 (1978); *State Farm Fire and Casualty v. Reuter*, 299 Or. 155, 700 P.2d 236 (1985); *State Farm Fire & Casualty Co. v. Sallak*, 140 Or.App. 89, 914 P.2d 697 (1996), *review denied*, 324 Or. 18, 920 P.2d 551 (1996); *Restatement (Second) of Judgments* § 85 (1982); *but cf. Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (Cal.1978); *Massachusetts Property Ins. Underwriting Assoc. v. Norrington*, 395 Mass. 751, 481 N.E.2d 1364 (1985).

In *Safeco*, an insurance company filed an action seeking a declaratory judgment that it had no duty to indemnify a convicted murderer (i.e. its insured) or the heirs of the murder victim under the murderer's homeowner's insurance policy. *Safeco*, 796 P.2d at 1041. The homeowner's policy included a standard exclusionary clause for bodily injury "expected or intended by any insured." *Id.* The insurance company moved for summary judgment, maintaining that "because [the insured] was convicted of second degree murder in the killing his conduct was 'intended' for the purposes of the exclusionary clause" and therefore both insured and heirs "were collaterally estopped from raising the issue again in a civil trial." *Id.* at 1041–42.

After taking judicial notice of the record in the criminal case, the trial court granted summary judgment in favor of the insurance company. *Id.* at 1042. On appeal, the murder victim's heirs argued that they were not parties to the criminal trial, and consequently, the doctrine of collateral estoppel should not apply to them. *Id.* The Idaho Court of Appeals rejected this argument and affirmed the trial court's decision. *Id.*

The court of appeals focused its analysis on whether the heirs were in privity with the insured. *Id.* at 1044. The court observed that any claims that the heirs had "upon the coverage of the insurance policy stem[med] from the contractual relationship" between the insurance company and its insured. *Id.* Therefore, the rights of the heirs, the "wrongful-death claimants," were only as viable as the rights that the murderer could assert against the insurance company under the contract. *Id.* The court concluded that "in this limited context" the relationship was sufficient to constitute privity for the purposes of collateral estoppel. *Id.*

In the instant case, Stout occupies the same position as the heirs in *Safeco*. She was not a party to the prior criminal action, she was the victim of the insured, and she was sued in a declaratory action by the insurance company. Stout's claims for coverage under the insurance policy stem from the contractual relationship between Romel and Tradewind. Thus, any "right" which Stout has to the proceeds of the insurance policy derive solely from Romel's right to coverage under the policy. Similarly, then, in this limited context, the relationship between Romel and Stout is sufficient to constitute privity under collateral estoppel.

### b.

The *Safeco* court cautioned, however, that "[i]ntertwined with the concepts of privity for collateral estoppel purposes" are "the requirements of due process." *Id.; see also Clemmer*, 151 Cal.Rptr. 285, 587 P.2d at 1102 ("[T]his requirement of identity of parties or privity is a requirement of due process of law."). The court recognized that "[i]t would be a violation of due process for a judgment to be binding on a litigant who was not a party or privy and therefore has never had an opportunity to be heard." *Safeco*, 796 P.2d at 1044 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327, n. 7, 99 S.Ct. 645, 649, n. 7, 58 L.Ed.2d 552 (1979)). As a result, due process requires that the estopped party have an identity or community of interest with, and adequate representation

by, the losing party in the first action and reasonably expects to be bound by the prior adjudication. *Id.* When applying this rule, the court listed various equitable factors which must be considered:

> [W]hether it would be generally unfair in the second case to use the result of the first case, whether assertion of the plea of estoppel by a stranger to the judgment would create anomalous request, whether the party adversely affected by the collateral estoppel offers a sound reason why he should not be bound by the judgment, and whether the first case was litigated strenuously or with vigor.

*Id.* at 1045 (citation omitted). After applying these considerations, the *Safeco* court concluded that no due process rights were violated by the application of collateral estoppel against the heirs. *Id.*

■ We similarly conclude that the application of collateral estoppel under the present circumstances would not violate Stout's right to due process. We do not believe that it would be "generally unfair" in the instant case to use the result of the criminal trial in the declaratory judgment action. While Tradewind was not a party in the criminal case, its "plea of estoppel" would not create an anomalous result from that reached in the criminal case. Stout's interest in litigating the issue of Romel's intent in the declaratory judgment action do not differ from what Romel's interest was in litigating that issue in the criminal case. Romel's personal interest would have been served by establishing that he did not intend to cause Stout's death, the same ultimate objective Stout apparently hopes to establish in the declaratory action. *See Jones,* 596 A.2d at 426; *New Jersey Mfrs. Ins. Co.,* 391 A.2d at 927. Because the interests of Romel and Stout coincide, Tradewind's estoppel assertion in this civil action would not create an "anomalous" result.

The State of Hawai'i had already proven beyond a reasonable doubt that Romel intended to cause Stout's death. In the declaratory action, Tradewind would have had to prove by a preponderance of the evidence that Romel intended to murder Stout. The higher burden of proof satisfied in the criminal case already encompasses the lower standard of proof necessary in the instant civil case. Relitigation of Romel's intent would not be warranted under these circumstances. *See Walburn,* 378 F.Supp. at 865 ("If the criminal jury found beyond a reasonable doubt that [defendant] by his acts either expected or intended to injure [victim], it would be an exercise in futility for this Court to retry the same issues. This is especially true where the civil burden is only by a preponderance [of the evidence]."); *Casey,* 491 P.2d at 210 (holding insured's jury trial conviction of assault with a dangerous weapon upon victim conclusively established that victim's injuries were intentionally inflicted and therefore liability was not covered by insurer).

The evidence at the criminal trial indicated Romel employed extensive expert testimony to advance the defense that he was under the influence of drugs at the time of the shooting, the same contention Stout raised in opposition to Tradewind's summary judgment motion. Hence, the record reflects that Romel litigated the intent issue in the criminal case "strenuously [and] with vigor." *Safeco,* 796 P.2d at 1045.

Although the tragedy suffered by Stout is undeniable, we cannot conclude, considering the factors we have reviewed *supra,* that there are sound legal reasons precluding Stout from being bound by the criminal case judgment. The policies of promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and protecting against vexatious[16] litigation would support a similar result. *Clemmer,* 151 Cal.Rptr. 285, 587 P.2d at 1103.

V.

Under the circumstances presented in this case, all of the requirements for the applica-

---

16. We do not imply that Stout's personal injury suit was "vexatious."

tion of collateral estoppel have been met. Accordingly, we conclude that Stout is collaterally estopped from litigating the issue of Romel's intent to cause her death and that, therefore, summary judgment was properly granted in favor of Tradewind.

For the foregoing reasons, the November 17, 1992 order and the September 10, 1993 stipulated order granting summary judgment are affirmed.