<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000551
23-APR-2021
07:52 AM
Dkt. 67 MO**</span>

NO. CAAP-17-0000551

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


GENGHIS KAIHEWALU, Plaintiff-Appellant,
v.
DEPARTMENT OF BUSINESS, ECONOMIC DEVELOPMENT
AND TOURISM, STATE OF HAWAII, HAWAII HOUSING
FINANCE AND DEVELOPMENT CORPORATION,
Defendants/Third-Party Plaintiffs-Appellees,
v.
REALTY LAUA, LLC, Third-Party Defendant-Appellee,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE
PARTNERSHIPS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10,
and DOE GOVERNMENTAL AGENCIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2827)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)

Plaintiff-Appellant Genghis Kaihewalu (**Kaihewalu**)
appeals from: (1) the September 22, 2016 Final Judgment in Favor
of Defendants[-Appellees] State of Hawaiʻi, Department of
Business, Economic Development and Tourism [(**DBEDT**)], and Hawaiʻi
Housing Finance and Development Corporation [(**HHFDC**)]
[(collectively, the **State**)] and Against [Kaihewalu] (**Judgment**);
and (2) the December 8, 2017 Amended Final Judgment in Favor of
[the State] and Against [Kaihewalu] (**Amended Judgment**), entered

by the Circuit Court of the First Circuit (**Circuit Court**).[1] Kaihewalu also challenges the Circuit Court's:  (1) July 7, 2016 Order Granting [the State's] Motion for Summary Judgment (**Order Granting Summary Judgment**); and (2) November 2, 2016 Order Denying [Kaihewalu]'s Motion for Reconsideration of [the Circuit] Court's Judgment Entered on September 22, 2016, of the [Order Granting Summary Judgment] (**Order Denying Reconsideration**).

I.    BACKGROUND

On October 23, 2013, Kaihewalu filed the Complaint in this action against the State.  Kaihewalu alleged that from about December 2010 to October 17, 2011, he was employed as a general laborer with Realty Laua, LLC, (**Realty Laua**), the company that had contracted with HHFDC to manage the Honokowai Kauhale affordable housing project on Maui.  Kaihewalu alleged that he was hired after meeting the needs of the position, that he never received any complaints about his job performance from the residents or other employees at Honokowai Kauhale, and that he was only ever praised by the foreman.

According to the Complaint, Kaihewalu's foreman, Glenn Ishikawa (**Ishikawa**), was relieved of his duties by Realty Laua in June 2011, and subsequently — "out of what is believe[d] to be spite" — Ishikawa informed HHFDC Executive Director Karen Seddon (**Seddon**) that Kaihewalu was a felon.  Kaihewalu also alleged that various local news articles were published regarding Realty Laua's hiring of convicted felons to work on the Honokowai

---

[1]    The Honorable Edwin C. Nacino entered the Judgment.  The Honorable Dean E. Ochiai entered the Amended Judgment.

Kauhale project, specifically naming Kaihewalu, and that Seddon had reacted to the articles by demanding that Realty Laua immediately relieve Kaihewalu and another felon-employee of their duties.  Kaihewalu alleged that Seddon had cited "numerous newspaper articles" as well as reports from residents that they felt unsafe with felons being on the property.

The Complaint further alleged that based on the news articles, Seddon requested a September 2011 site inspection be conducted at Honokowai Kauhale, which differed from those previously conducted in that the September 2011 inspection included only tenant interviews, as opposed to unit inspections and file folder reviews.  According to the Complaint, Seddon then demanded, via a September 28, 2011 letter, that Realty Laua "[r]emove existing staff and replace in accordance with Contract Requirements[,]" citing that "[i]t is unclear what current maintenance qualifications are and whether or not they are qualified in accordance with the Contract to be employed in such position."  The Complaint alleged that Realty Laua had no non-discriminatory reason to terminate its employees and that, because of Realty Laua's refusal to terminate Kaihewalu, the State terminated its contract with Realty Laua on October 17, 2011, thereby causing Kaihewalu's employment to be terminated with Realty Laua.

Kaihewalu asserted four counts against the State:  (1) attempted arrest and court record discrimination (**Count I**), in violation of Hawaii Revised Statutes (**HRS**) § 378-2(A)(3) (Supp.

2011);[2] (2) violation of public policy (**Count II**); (3) intentional interference with economic relations (**Count III**); and (4) intentional infliction of emotional distress (**Count IV**). Kaihewalu sought declaratory and injunctive relief, as well as consequential, special, and punitive damages, plus attorneys' fees and costs.

On March 25, 2014, the State filed an Answer to Complaint; on April 1, 2014, the State filed a Third-Party Complaint against various Doe Entities, as well as an Amended Answer to Complaint and Cross-Claim Against [Doe Entities] for indemnification.  On September 29, 2014, the State filed a Motion to Identify Realty Laua, LLC, as Doe Corporation 1, which the Circuit Court granted on December 5, 2014.

On March 31, 2015, the State filed a Motion for Judgment on the Pleadings on the Complaint, which the Circuit Court granted, in part, on May 21, 2015, dismissing with

---

[2]      HRS § 378-2 provided, in pertinent part:

> **§ 378-2  Discriminatory practices made unlawful; offenses defined.**  (a) It shall be an unlawful discriminatory practice:
> > (1)   Because of race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, . . .:
> > > (A)   For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;
> > . . . .
> >
> > (3)   For any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

prejudice Counts II and IV, and without prejudice Count III of the Complaint.[3]

A jury-waived trial was set for the week of July 18, 2016.

On May 17, 2016, the State filed a Motion for Summary Judgment with respect to Count I arguing, *inter alia*, that: (1) it did not cause Kaihewalu to lose his employment with Realty Laua; (2) HHFDC lawfully terminated its contract with Realty Laua within the terms of the contract; and (3) HHFDC did not "aid, abet, incite, or coerce" any discriminatory practice that harmed Kaihewalu or otherwise violate HRS § 378-2(A)(3). Instead, the State asserted, the contract between HHFDC and Realty Laua was terminated after a review by an independent consultant revealed that Realty Laua's performance did not meet the contract standards and the allegations that Seddon instructed Realty Laua to terminate the employment of any felons were untrue.

In support of its motion, the State attached a declaration from Seddon (**Seddon Declaration**) countering various allegations in Kaihewalu's Complaint, which declaration included the following:

> 4. In my capacity as the Executive Director of HHFDC, I became personally familiar with the Contract for Goods or Services Based Upon Competitive Sealed Proposals between HHFDC and Realty Laua, LLC, effective as of March 1, 2010, which I signed on behalf of HHFDC as its Executive Director on February 25, 2010; my signature is located on the second page of said Contract. A true and correct copy of the Contract is attached hereto as Exhibit "A."
>
> . . . .
>
> 7. [Kaihewalu] alleges in ¶ 10 of the Complaint filed in this matter that "Upon submitting his application to

---

[3] Kaihewalu does not challenge this ruling on appeal.

Realty Laua, LLC[,] [Kaihewalu] was aware of the minimum qualifications, no experience necessary, of the general laborer as posted on the State of Hawaiʻi job listing." That statement is wrong as the job was not listed as a State of Hawaiʻi job listing as it was a position hired directly by Realty Laua.

8.   [Kaihewalu] alleges in ¶ 15 of the Complaint filed in this matter that "Thereafter, out of what is believe[d] to be spite, Glenn Ishikawa informed [HHFDC] Executive Director Karen Seddon of [Kaihewalu] being a felon."  That statement is false as I never have been in communication with Glenn Ishikawa; I was not aware that [Kaihewalu] was employed by Realty Laua; and I was not aware that [Kaihewalu] was a felon prior to HHFDC terminating its Contract (described in ¶ 4) with Realty Laua.

9.   [Kaihewalu] alleges in ¶¶ 19 and 20 of the Complaint filed in this matter that "Ms. Seddon reacted to the news articles by demanding to [Realty Laua] that [Kaihewalu] and another employee be immediately relieved of their duties.  The reason the State of Hawaiʻi wanted [Kaihewalu] terminated was due to 'numerous newspaper articles' written recently."  Those statements are false.  I made no such demand.  HHFDC terminated a Contract with Realty Laua and all of Realty Laua's employees were told that they had to leave the property.  There was no employer relationship between HHFDC and [Kaihewalu] or with any other Realty Laua employees.  If the employment of any Realty Laua employees was terminated[,] Realty Laua chose to terminate such employment.

10.  [Kaihewalu] alleges in ¶ 21 of the Complaint filed in this matter that "Based on information and belief, Ms. Seddon stated that the residents and community were unsafe with felons being on the property."  That statement is false.  I made no such statement and had nothing to do with Realty Laua terminating any employees.

.  .  .  .

12.  [Kaihewalu] alleges in ¶ 31 of the Complaint filed in this matter that " .  .  . Ms. Seddon commanded Realty Laua, LLC to terminate their employees who are felons."  That statement is false.  Neither I nor anyone from HHFDC instructed Realty Laua to terminate any employees — felon or not.  HHFDC required the removal of the Resident Manager (Lisa Felafine) [sic], not termination, as part of the "cure" for Realty Laua's defaults under the Contract and when Realty Laua did not perform the items required as part of the cure, HHFDC terminated the Contract.  A true and correct copy of the NOTICE TO CURE, dated September 28, 2011 is attached hereto as Exhibit B.  A true and correct copy of the NOTICE OF CONTRACT TERMINATION, dated October 17, [2011] is attached hereto as Exhibit C.

13.  HHFDC (i) terminated the Contract after a review by an independent consultant based on Realty Laua's poor performance, and (ii) neither I nor anyone on behalf of HHFDC aided, abetted, incited, compelled or coerced Realty Laua in terminating [Kaihewalu]'s employment at Realty Laua.

As referenced in the Seddon Declaration, the exhibits thereto included:  (1) a copy of the State of Hawaiʻi Contract for Goods or Services Based Upon Competitive Sealed Proposals between HHFDC and Realty Laua, effective March 1, 2010 (**Realty Laua Contract**), signed by Seddon and Robert Faleafine (**Mr. Faleafine**), as President of Realty Laua; (2) a copy of the September 28, 2011 Notice to Cure, signed by Seddon and addressed to Mr. Faleafine (**Notice to Cure**); and (3) a copy of the October 17, 2011 Notice of Contract Termination (**Notice of Contract Termination**), similarly signed by Seddon and addressed to Mr. Faleafine.  The Notice of Contract Termination cites ten reasons for the termination, including Realty Laua's failure to replace the Resident Manager of Honokowai Kauhale, as well as Realty Laua management and maintenance staff's failure to maintain the property in accordance with the contract requirements.

On June 7, 2016, Kaihewalu filed a Memorandum in Opposition, arguing that there remained several disputed issues of material fact.  Kaihewalu submitted a declaration (**Kaihewalu Declaration**), which mirrored the allegations in the Complaint and attested to the following, in pertinent part:

> 11.  Realty Laua, LLC's manager Lisa Faleafine [(**Ms. Faleafine**)] told me that, out of what is believe[d] to be spite, [relieved foreman] Glenn Ishikawa informed the [HHFDC] Executive Director Karen Seddon and Jim Dooley of the Hawaii Reporter Newspaper of me being a felon.
>
> . . . .
>
> 13.  On or about August 22, 2011, an article was written in the Hawaii Reporter by Jim Dooley that stated, a convicted felon Genghis Kaihewalu had been hired at Honokowai Kauhale.

14.  Several follow up articles were also published in the Hawaii Reporter and Maui News regarding convicted felons working at Honokowai Kauhale.

15.  Realty Laua[]'s manager [Ms.] Faleafine and Realty Laua[]'s owner Robert Faleafine told me that, Ms. Seddon reacted to the news articles by demanding to Realty Laua[] that myself and another employee - who is a felon - be immediately relieved of our duties.

16.  The reason the [*sic*] Ms. Seddon and the State wanted me terminated was due to "numerous newspaper articles".

17.  [Ms.] Faleafine, Realty Laua's manager, told me that Ms. Seddon informed her that the residents and community were unsafe with felons being on the property.

       . . . .

19.  I was told by [Ms.] Faleafine, in or about September 2011, Ms. Seddon requested an additional, second site inspection be conducted at Honokowai Kauhale based on the news articles.

       . . . .

25.  [Ms.] Faleafine told me that, in a letter dated September 28, 2011 labeled "Immediate Action Required", Ms. Seddon demanded that Realty Laua, LLC, "Remove existing staff and replace in accordance with Contract Requirements."  She goes on to state, "It is unclear what current maintenance qualifications are and whether or not they are qualified in accordance with the Contract to be employed in such position".

       . . . .

27.  Realty Laua[]'s owner [Mr.] Faleafine told me that although Ms. Seddon commanded Realty Laua, LLC to terminate their employees who are felons, Realty Laua, LLC had no non-discriminatory reason to terminate its employees as their employees posed no threats to the residents, clients nor to the functioning of the business.

28.  Mr. Faleafine went on to tell me that because I am a felon and also disabled it was illegal and not fair for the State to try to force Realty Laua, LLC to terminate me.

29.  According to Lisa and Robert Faleafines prior information told to me, based on Realty Laua, LLC's refusal to terminate me, [HHFDC], on or about October 17, 2011, terminated its contract with Realty Laua, LLC thereby causing my employment to be terminated as Realty Laua, LLC only had work for me on Maui based on their contract with the State of Hawaiʻi for the Honokowai Kauhale housing project.

Kaihewalu attached to his declaration:  (1) a copy of three news articles published in August 2011; (2) a copy of a

State of Hawaiʻi job listing for General Laborer I, with a revised "Announcement Date" of December 10, 2009; and (3) a copy of a notarized letter of support dated July 25, 2013, and signed by Ms. Faleafine (**Faleafine Letter**).

Kaihewalu also presented a five-paragraph declaration from Ms. Faleafine (**Faleafine Declaration**), in which she attested:

> 1.  Unless otherwise indicated, I make this declaration based upon my personal knowledge and belief.
>
> 2.  I am competent to testify to the matters set forth herein.
>
> 3.  Attached hereto is a true and accurate copy of my four (4) page notarized July 25, 2013 letter written regarding Genghis Kaihewalu's employment at Realty Laua, LLC ("7/25/13 Letter").
>
> 4.  To the best of my recollection, the information and contents in the attached copy of the[]7/25/13 Letter are true and accurate.
>
> 5.  That declarant has read the above-stated facts and declares under penalty of law that they are true to the best of declarant's belief, knowledge and information at this time.

A copy of the Faleafine Letter was also attached to the Faleafine Declaration.  The letter states, in full:

> To Whom It May Concern:
>
> Re:  Genghis Kaihewalu
>
> Mr. Kaihewalu was employed with Realty Laua for the period of December 2010 to October 17, 2011 as a General Laborer.
>
> Upon submitting his application, Mr. Kaihewalu was aware of the minimum qualification(s)- no experience necessary - of the General Laborer position as posted on the State [o]f Hawaii Job listing which is currently still listed on their web site.  Mr. Kaihewalu met the needs of the position and was hired.
>
> During his employment, Realty Laua did not receive any complaints on his job performance, work ethic, from residents and his fellow employees.  His Foreman Glenn Ishikawa only had praise for him of his willingness to work and being able to do his job as assigned - as Mr. Kaihewalu is an amputee.
>
> Upon Mr. Ishikawa being relieved of his duties in June 2011 - it was Mr. Ishikawa who informed the [HHFDC] - (out of

9

spite and revenge) – Executive Director Karen Seddon of Mr. Kaihewalu being a convicted felon.  A crime he did over ten (14) years ago.

Ms. Seddon reacted on the newspaper articles and coerced actions into demanding Mr. Kaihewalu and another employee be relieved of their duties.  As her reasoning for terminating his employment was the "numerous newspaper articles" as mentioned in her "Form SPO-007 (07/19/2011) [sic].

Various newspaper articles with the Maui News and Hawaii Reporter – stating they were convicted felons living and working on the property.  Ms. Seddon stated the residents and community was unsafe with felons being on the property. This is discriminating and derogatory statements by Ms. Seddon as Mr. Kaihewalu is in a protected class.

September 2011, Ms. Seddon requested a site inspection be conducted based on the newspaper articles in which she hired Spectrum Enterprise.

Spectrum Enterprise had conducted previous audits in 2008, 2009, 2010 and February 2011 (6 months prior to the newest audit).  During the 2008 – early 2011 audit – Spectrum conducted unit inspections and file folder reviews.  During the September 2011 audit – Spectrum conducted tenant interviews only.  The 2008 – early 2011 – the audits are all similar or exactly the same based on HHFDC not completing their side of responsibilities for the capital improvements of the property.

The September 2011 audit -interviewer/auditor Lois Churchill and September 28, 2011 letter signed by Karen Seddon is found to be bias.

In the newspaper articles and interviewed statements – it was found there was "no wrongdoing" on the property by Mr. Kaihewalu and another employee.

The letter dated September 28, 2011 by HHFDC Karen Seddon demanding "Immediate Action Required" – "Remove existing staff and replace in accordance with Contract Requirements." As she states "It is unclear what current maintenance qualifications are and whether or not they are qualified in accordance with the Contract to be employed in such positions."  However, as mentioned above, the job qualifications are listed on the State of Hawaii job listings and Mr. Kaihewalu [was] truly qualified for his position.

Although the order had been made to remove Mr. Kaihewalu from his position, Realty Laua did not feel that any of their employees posed a threat to their clients nor business function.

Mr. Kaihewalu being a convicted felon did not sit well with HHFDC/Karen Seddon and therefore, terminated its contract with Realty Laua that resulted in ending his employment evasively.

Sincerely,

[/s/ Lisa Faleafine]
Lisa Faleafine

(Format altered).[4]

In reply, the State objected to the exhibits attached to the Kaihewalu Declaration as well as various statements within the Kaihewalu Declaration and the Faleafine Letter, asserting that the majority of the "evidence" Kaihewalu put forth in his opposition was inadmissible and therefore unable to serve as the basis for denying the State's Motion for Summary Judgment. Specifically, the State argued that Kaihewalu failed to demonstrate personal knowledge as to the statements made by Mr. Faleafine and Ms. Faleafine to Kaihewalu with respect to Seddon's demands and that Kaihewalu also lacked personal knowledge of Seddon's reactions to the news articles or her reasons for terminating the Realty Laua Contract.  With respect to the Faleafine Declaration and Letter, the State similarly argued that Ms. Faleafine had failed to demonstrate personal knowledge with regard to Seddon's statements and motivation in terminating the Realty Laua Contract.  The State further objected to the Kaihewalu Declaration and Faleafine Declaration and Letter on hearsay grounds.  The State attached a brief supplemental declaration from Seddon (**Seddon Supplemental Declaration**), which stated, in pertinent part:

> 2.  When the contract with Realty Laua was terminated, [HHFDC] was required to contract with another company to manage the Honokowai Kauhale affordable rental housing project in Lahaina, Maui for approximately six months until a permanent management company could be secured after going through the normal procurement process required by Hawaii law.

---

[4]     Kaihewalu did not submit a declaration from Ishikawa or Mr. Faleafine.

> 3.  As there was an immediate need to replace Realty Laua, I completed a State Procurement Office Notice of Request for Exemption from HRS Chapter 103D.  This is know[n] as a SPO-007 form.
>
> . . . .
>
> 5.  I did not prepare any other Request for Exemption with respect to replacing Realty Laua.

A copy of the approved SPO-007 form was attached to the Supplemental Seddon Declaration.

The State concluded that Kaihewalu had offered no admissible evidence to contradict the evidence set forth in the Motion for Summary Judgment and that "[w]hen the inadmissible evidence is removed" from Kaihewalu's opposition, the Motion for Summary Judgment should be granted.

At the June 15, 2016 hearing on the motion, the State reiterated its argument that Kaihewalu's opposition was devoid of any admissible evidence to defeat its Motion for Summary Judgment.  Kaihewalu engaged in the following exchange with the Circuit Court:

> [COUNSEL FOR KAIHEWALU]:  . . . [T]here's two levels of hearsay we have to get by.  And both of those levels of hearsay, there's exceptions to both of them on 803(A)(2).
>
> In other words, [Seddon] tells Ms. -- Mr. Kaihewalu's boss that they must terminate him and another man because they're felons.  That statement is clearly a party admission.  Then the question becomes is [Mr.] Kaihewalu's boss' statement also an admission?  And, clearly, now that they are a party to this action, that's also a party admission, Your Honor.  So there's two levels of hearsay, but both of those levels of hearsay pass through the exceptions of 803(A)(2) without question.
>
> . . . .
>
> THE COURT:  Let me ask this, counsel, did you amend over on the third-party complaint?
>
> . . . .
>
> [COUNSEL]:  No.

> THE COURT:  Then why are they a party to your lawsuit?  They're a party in the third-party complaint filed by [the State].  You didn't amend your complaint; correct?
>
> [COUNSEL]:  Correct.  But I believe they're still a party to this lawsuit, Your Honor.
>
> THE COURT:  Okay, all right.

In response, the State argued:

> [H]e keeps talking about [Seddon]'s alleged statements. However, we don't know what was said, to who it was said, when it was said.  Is that an interpretation of somebody's statement?  What were the words that were used?  Who else was present?  All we have is this alleged statement. There's no foundation that these people were even present when this was said.  There's no foundation that it was said to them, nothing like that.

The Circuit Court, in granting the motion, explained:

> The Court agrees with [the State] and the State's interpretation of the evidence presented.  We're passed discovery deadline.  The simple fact, counsel, is all you needed to do was either depose or include the Falofinis [sic] as part of the case.
>
> I don't believe there's . . . enough authentication and exception to the hearsay rule based on what you've put in your memo in opp.  So there's no genuine issue of material fact and, therefore, I'm going to grant the motion on the last count[.]

Kaihewalu did not address the State's objections to the lack of personal knowledge or foundation.

On July 7, 2016, the Circuit Court entered the Order Granting Summary Judgment, dismissing Count I with prejudice. The Circuit Court entered the Judgment on September 22, 2016.

On September 27, 2016, Kaihewalu filed a Motion for Reconsideration of [the Judgment], asserting that the Circuit Court erroneously "based its entire ruling on the proposition that a third-party admission is not a 'Declaration Against Interest' because a third-party is not a party to the Plaintiff herein."  Kaihewalu's memorandum in support of the motion addressed the sole issue of whether Realty Laua is a "party-opponent" to Kaihewalu with respect to Hawaiʻi Rules of Evidence

(**HRE**) Rule 803(a)(1), notwithstanding Kaihewalu's failure to amend the complaint to name Realty Laua as a defendant. Kaihewalu also argued that the statements in the Faleafine Letter regarding Seddon's reasoning for terminating Kaihewalu's employment were not offered for their truth but rather "to show that at a particular time and place[, HHFDC] made this ridiculous slanderous statement," and that, consequently, such a statement could not constitute hearsay.

In response, the State argued that Kaihewalu's failure to amend the Complaint to include a claim against Realty Laua did, in fact, preclude adversity between the parties such that HRE Rule 803(a)(1) would apply.  The State further argued that independent bases supported the Circuit Court's ruling, reiterating its position that the Kaihewalu Declaration and Faleafine Declaration and Letter failed to establish sufficient foundation that the declarants possessed personal knowledge of the facts and statements set forth therein.

The Circuit Court, without a hearing, entered an Order Denying Reconsideration on November 2, 2016.  On November 16, 2016, Kaihewalu filed his notice of appeal under CAAP-16-0000814, which this court dismissed on June 29, 2017, for lack of appellate jurisdiction.  Kaihewalu v. DBEDT, CAAP-16-0000814, 2017 WL 2829817, *2 (Haw. App. June 29, 2017) (Order).

On July 17, 2017, Kaihewalu filed a second notice of appeal, which initiated the instant appeal.  On December 8, 2017, pursuant to this court's November 17, 2017 order for temporary remand, the Circuit Order entered the Amended Judgment.

14

II.  POINTS OF ERROR

Kaihewalu raises three points of error on appeal, contending that the Circuit Court erred in ruling that:  (1) Realty Laua was not party to his case as it relates to the application of the rule against hearsay; (2) the statements of Ms. Faleafine and Mr. Faleafine as delineated in the Kaihewalu Declaration were inadmissible; and (3) the Faleafine Declaration was inadmissible.

III. APPLICABLE STANDARDS OF REVIEW

The appellate court reviews the circuit court's granting or denial of summary judgment *de novo*.  Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005) (citing Hawaiʻi Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 221, 11 P.3d 1, 9 (2000)).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Durette v. Aloha Plastic Recycling, Inc., 105 Hawaiʻi 490, 501, 100 P.3d 60, 71 (2004) (alteration in original) (quoting Hawaiʻi Cmty. Fed. Credit Union, 94 Hawaiʻi at 221, 11 P.3d at 9).

"Although [the courts] carefully scrutinize the materials submitted by the moving party to ensure compliance with the requirements of [Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(e)], the courts are more indulgent towards the materials

15

submitted by the non-moving party."  Eddins v. Morrison, 105

Hawaiʻi 376, 378, 98 P.3d 247, 249 (App. 2004) (quoting Miller v.

Manuel, 9 Haw. App. 56, 66, 828 P.2d 286, 292 (1991)).

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

Kealoha v. Cty. of Hawaiʻi, 74 Haw. 308, 319-20, 844 P.2d 670,

676 (1993).

IV.  DISCUSSION

  A.    Kaihewalu's Declaration

        Kaihewalu argues that the Circuit Court erred in

determining that Realty Laua was not a "party" with respect to

the application of the party-admission exception to the rule

against hearsay and its consequent ruling that the Faleafines'

statements in the Kaihewalu Declaration and the attached

Faleafine Letter were inadmissible.  Kaihewalu asserts that the

Faleafines' statements to Kaihewalu, as recounted in the

Kaihewalu Declaration, are admissible under HRE Rule 803(a)(1)

and (2), as vicarious admissions of a party-opponent.  According

to Kaihewalu, Realty Laua is in effect an adverse party to

Kaihewalu, notwithstanding the undisputed fact that Kaihewalu did

not plead any claims against Realty Laua, and consequently, the

statements of Realty Laua's agent should be admissible as

exceptions to the hearsay rule.

16

We first note that Kaihewalu does not dispute that the State, in its Motion for Summary Judgment, satisfied its initial burden of showing that there is no genuine issue to material fact as to his claim in Count I.  As such, it was incumbent upon Kaihewalu to then come forward, through affidavit or other evidence, with specific facts showing that there is a genuine issue of material fact.  See, e.g., Miller, 9 Haw. App. at 65, 828 P.2d at 292.  Kaihewalu points to his declaration and attached Faleafine Letter as evidence of Seddon's demands and motivation in terminating the Realty Laua Contract, and asserts that Seddon made certain statements to the Faleafines about Realty Laua's employment of felons, including Kaihewalu. Kaihewalu's Declaration states:

15.   Realty Laua[]'s manager Lisa Faleafine and Realty Laua[]'s owner Robert Faleafine told me that, **Ms. Seddon reacted to the news articles by demanding to [Realty Laua] that myself and another employee - who is a felon - be immediately relieved of our duties.**

17.   Lisa Faleafine, Realty Laua's manager, told me that **Ms. Seddon informed her that the residents and community were unsafe with felons being on the property.**

. . . .

19.   I was told by Lisa Faleafine, in or about September 2011, Ms. Seddon requested an additional, second site inspection be conducted at Honokowai Kauhale based on the news articles.

. . . .

25.   Lisa Faleafine told me that, in a letter dated September 28, 2011 labeled "Immediate Action Required", **Ms. Seddon demanded that Realty Laua, LLC, "Remove existing staff and replace in accordance with Contract Requirements**."  She goes on to state, "It is unclear what current maintenance qualifications are and whether or not they are qualified in accordance with the Contract to be employed in such position".

. . . .

17

27.  Realty Laua[]'s owner Robert Faleafine told me that
     although **Ms. Seddon commanded Realty Laua, LLC to
     terminate their employees who are felons**, Realty Laua,
     LLC had no non-discriminatory reason to terminate its
     employees as their employees posed no threats to the
     residents, clients nor to the functioning of the
     business.

28.  Mr. Faleafine went on to tell me that because I am a
     felon and also disabled it was illegal and not fair
     for the State to try to force Realty Laua, LLC to
     terminate me.

29.  According to Lisa and Robert Faleafines prior
     information told to me, **based on Realty Laua, LLC's
     refusal to terminate me, [HHFDC], on or about October
     17, 2011, terminated its contract with Realty Laua**,
     LLC, thereby causing my employment to be terminated as
     Realty Laua, LLC only had work for me on Maui based on
     their contract with the State of Hawaiʻi for the
     Honokowai Kauhale housing project.

(Emphasis added).

Kaihewalu attests that he only learned of Seddon's statements by way of statements made to him by the Faleafines. Thus, we must address whether the Faleafines' statements presented in the Kaihewalu Declaration are themselves admissible as exceptions to the hearsay rule.  HRE Rule 803(a) provides, in relevant part:

> **Rule 803  Hearsay exceptions; availability of declarant immaterial.**  The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>   (a)  Admissions.
>   (1)  Admission by party-opponent.  A statement that is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity, or (B) a statement of which the party has manifested the party's adoption or belief in its truth.
>   (2)  Vicarious admissions.  A statement that is offered against a party and was uttered by (A) a person authorized by the party to make such a statement, (B) the party's agent or servant concerning a matter within the scope of the agent's or servant's agency or employment, made during the existence of the relationship, or (C) a co-conspirator of the party during the course and in furtherance of the conspiracy.

As dictated by the plain language of HRE Rule 803, the exception for hearsay statements as admissions by party-opponents

applies to a statement *that is offered against the same party who made the statement*.  HRE Rule 803 (a)(1); HRE Rule 803 cmt. ("[T]here are two conditions of admissibility under this paragraph: (1) that the statement was made by a party to the litigation [(or its agent)], and (2) *that the statement now be offered against that party*.") (emphasis added); see also Kekua v. Kaiser Found. Hosp., 61 Haw. 208, 217, 601 P.2d 364, 371 (1979) ("The extrajudicial statements of a party-opponent, *when offered against the same*, are universally deemed admissible at trial as substantive evidence of the fact or facts stated.") (emphasis added).

Here, whether Realty Laua is considered a party to the litigation initiated by Kaihewalu is inapposite to the determination of whether the Faleafines' statements are admissible as the agent admissions of Realty Laua, since Kaihewalu plainly does not seek to offer any of the Faleafines' statements *against Realty Laua.*  HRE Rule 803(a)(1).  Kaihewalu acknowledges he did not assert any claims against Realty Laua. Kaihewalu seeks instead to use the Faleafines' statements *against the State*, but has not sought to establish that the Faleafines' statements would somehow constitute admissions by the State, such that those statements would qualify as HRE Rule 803(a)(1) or (2) exceptions to the hearsay rule.  Thus, Kaihewalu has not established that any of the Faleafines' statements, as recounted in the Kaihewalu Declaration, or the contents of the Faleafine Letter attached thereto, constitute admissible evidence of Seddon's alleged statements that could give rise to a genuine

issue of material fact.  Accordingly, we conclude that Kaihewalu's argument is without merit.

B.    The Faleafine Declaration and Letter

Kaihewalu argues that the Circuit Court erred in determining that the Faleafine Declaration and attached Faleafine Letter were inadmissible, because the statements contained therein are not hearsay and thus no hearsay exception is necessary.  Kaihewalu argues that Seddon's statements as recounted in the Faleafine Declaration and Letter are not offered for the truth of the matters asserted, but rather as evidence that HHFDC, via Seddon, made the statements at a particular time and place.

With respect to Seddon's purported statements, the Faleafine Letter states:

> Ms. Seddon reacted on the newspaper articles and coerced actions into demanding Mr. Kaihewalu and another employee be relieved of their duties.  As her reasoning for terminating his employment was the "numerous newspaper articles" as mentioned in her "Form SPO-007 (07/18/2011).
>
> . . . .
>
> Ms. Seddon stated the residents and community was [sic] unsafe with felons being on the property.
>
> . . . .
>
> Ms. Seddon requested a site inspection be conducted based on the newspaper articles in which she hired Spectrum Enterprise.
>
> . . . .
>
> The letter dated September 28, 2011 by HHFDC Karen Seddon demanding "Immediate Action Required" – "Remove existing staff and replace in accordance with Contract Requirements."
>
> . . . .
>
> Mr. Kaihewalu being a convicted felon did not sit well with HHFDC/Karen Seddon and therefore, terminated its contract with Realty Laua[.]

Arguably, Seddon's statements do not fall within the general rule against hearsay, since Kaihewalu is not seeking to establish, for example, whether residents and community were, in fact, unsafe with felons on the property.  Moreover, even if the statements constituted hearsay, the parties do not appear to dispute that Seddon's purported statements – if presented through admissible evidence – would fall within the party-admission exception of HRE Rule 803(a)(2).

However, as the State argues, regardless of the proffered purpose, Ms. Faleafine fails to assert or demonstrate personal knowledge of Seddon's alleged statements – for example, by describing the time, place, and/or other circumstances of the alleged statements - which renders the evidence inadmissible. Pursuant to the Hawaiʻi Rules of Civil Procedure, affidavits submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  HRCP Rule 56(e).  As provided in HRE Rule 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  See also HRE Rule 602 cmt. ("Evidence of personal knowledge is a general foundation requirement for admissibility of all evidence[.]").  In the summary judgment context, this means that "the affidavit must adequately reflect that the affiant (1) perceived the event about which they testified; and (2) had a present recollection of that

21

perception." Nationstar Mortgage, LLC v. Kanahele, 144 Hawaiʻi 394, 403, 443 P.3d 86, 95 (2019) (citing HRE Rule 602; Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 28, 346 P.3d 70, 97 (2015)). To the extent an affidavit does not comply with HRCP Rule 56(e), it should be disregarded. Keka, 94 Hawaiʻi at 221, 11 P.3d at 9 (quoting Cahill v. Hawaiian Paradise Park Corp., 56 Haw. 522, 539, 543 P.2d 1356, 1367 (1975)).

Personal knowledge to testify may be inferred from an affiant's position and the nature of the affiant's participation in the matters as described in the affidavit. Stallard v. Consol. Maui, Inc., 103 Hawaiʻi 468, 475-76, 83 P.3d 731, 738-39 (2004) (citing Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990), and holding that the affiants' personal knowledge of the operation of the resort and policy with respect to hotel districts could be reasonably inferred from their respective positions as president of the development company and deputy planning director of the county); Capital One Bank (USA), N.A. v. Huffman, CAAP-13-0003149, 2014 WL 6488771, *3 (Haw. App. Nov. 18, 2014) (SDO) (affiant's personal knowledge about the policies and procedures pertaining to credit card company's various credit card accounts could be reasonably inferred from her position as a Litigation Support Representative for the credit card company as described in her affidavit); see also In re Guardianship of Carlsmith, 113 Hawaiʻi 211, 230 n.28, 151 P.3d 692, 711 n.28 (2006) (affiant's statements that she personally "tried to call and to visit" subject of the guardianship petition and that the matters averred to were based

on "personal knowledge" were sufficient to affirmatively demonstrate personal knowledge).  However, "[a] mere recitation that the witness 'understood' or was 'advised' of a fact is insufficient, in itself, to establish that the witness perceived the facts for which testimony is offered, i.e., that the testimony is based on personal knowledge." Adams, 135 Hawaiʻi at 29, 346 P.3d at 98 (holding that CEO's declaration seeking to establish legitimate non-discriminatory reasons for not hiring plaintiff did not demonstrate personal knowledge because the bases for the information were unidentified third persons or external sources) (citing Addison M. Bowman, Hawaiʻi Rules of Evidence Manual § 602-1[3] (2014-15 ed.); State v. Apollonio, 130 Hawaiʻi 353, 362, 311 P.3d 676, 685 (2013) (striking testimony of a witness where nothing in evidence would support a finding that the witness had personal knowledge of the fact at issue)).

Moreover, evidentiary personal knowledge requirements "apply to a hearsay statement admitted under any of the hearsay exceptions . . . in that admissibility of a hearsay statement is predicated on the foundation requirement of the witness' personal knowledge of the making of the statement itself." Kanahele, 144 Hawaii at 403 n.12, 443 P.3d at 95 n.12 (citing HRE Rule 602 cmt.).  An affiant therefore satisfies the "personal knowledge" requirements only if she has personal knowledge of how the hearsay statement was made. Huffman, 2014 WL 6488771, at *2.

Under this standard, the Faleafine Declaration and Letter are not admissible evidence of Seddon's statements or demands, because they fail to establish the requisite foundation

of Ms. Faleafine's personal knowledge of those statements and demands.  The Faleafine Declaration does not purport to attest that the facts and statements contained within the Faleafine Letter are based on Ms. Faleafine's personal knowledge. Instead, the Faleafine Declaration attests that while the *declaration* is based upon personal knowledge, it merely states that "the information and contents in the [Faleafine Letter] are true and accurate" to the best of Ms. Faleafine's recollection. The Faleafine Letter itself is devoid of any facts demonstrating her personal knowledge of Seddon's statements, reactions, or demands to Realty Laua.  Ms. Faleafine does not describe to any degree the circumstances under which Seddon made her purported statements or whether Ms. Faleafine actually "perceived the event" of Seddon making these statements.  Kanahele, 144 Hawaiʻi at 403, 443 P.3d at 95.

It cannot be reasonably inferred from Ms. Faleafine's position or affiliated responsibilities that she would have had direct contact with Seddon or that any such conversations would have involved discussion of the status of the Realty Laua Contract.  While Ms. Faleafine is identified elsewhere in the record as Realty Laua's "manager" or "Resident Manager," nothing in the record, including the Faleafine Declaration or Faleafine Letter, describes the nature of this position, the dates of her employment in this position (including whether they coincided with Kaihewalu's dates of employment with Realty Laua or Seddon's effective dates as Executive Director of HHFDC), or any other evidence from which it could be reasonably inferred that Ms.

Faleafine's position with Realty Laua would likely expose her to direct communications of the nature attested to with the Executive Director of HHFDC.[5]  Indeed, the Notice to Cure, referenced in the Faleafine Letter as the "letter dated September 28, 2011," is addressed only to Mr. Faleafine, as *President* of Realty Laua.  In any event, the Notice to Cure makes no mention of concerns regarding the hiring of felons or safety of residents with the presence of such employees on the premise.[6]

Ultimately, the Faleafine Declaration and Letter do not allow for any reasonable inference of her personal knowledge of Seddon's statements or demands with respect to the Realty Laua Contract or her demands to Realty Laua to terminate Kaihewalu as a condition of the contract.  As such, the Faleafine Letter and Declaration are not admissible evidence of Seddon's alleged statements and cannot create a genuine issue of material fact in order to defeat the State's Motion for Summary Judgment.  Accordingly, we conclude that Kaihewalu's arguments concerning the Faleafine Declaration and Letter are without merit.

C.  Kaihewalu's Trustworthiness Argument

Finally, Kaihewalu contends the Faleafines' statements were admissible as inherently reliable and trustworthy.

---

[5]  Ms. Faleafine is also identified in the newspaper articles as the sister of Mr. Faleafine, but there is nothing in her declaration, her letter, or the record that would indicate that Ms. Faleafine would have been in direct contact with a senior officer of HHFDC by virtue of her relation to Mr. Faleafine.

[6]  Of note, the Notice to Cure signed by Seddon cites statements purportedly made by Ms. Faleafine.  However, this does not support an inference that Ms. Faleafine and Seddon were ever in direct contact to discuss the Realty Laua Contract, since the Notice to Cure reflects that Ms. Faleafine's statements were recorded as part of the September 2011 audit, which Kaihewalu asserts was conducted by a third-party.

Kaihewalu argues that because Realty Laua was a party to the underlying action, the trustworthiness of its agents' statements could be assessed through the course of litigating the action. Kaihewalu asserts that the opportunity to confirm or refute any statements renders the statements admissible and that the statements "should have come into evidence."

This argument lacks merit.  A motion for summary judgment can only be defeated by the presentation of admissible evidence, Keka, 94 Hawaiʻi at 221, 11 P.3d at 9, and we have concluded here that Kaihewalu presented no admissible evidence raising a genuine issue of material fact for trial.  Kaihewalu has presented no authority, and we find none, for the proposition that otherwise inadmissible evidence can defeat a motion for summary judgment, solely because a declarant is an agent of a third-party defendant and may potentially be called as a witness at trial.

V.    CONCLUSION

For these reasons, the Circuit Court's September 22, 2016 Judgment and December 8, 2017 Amended Judgment are affirmed.

DATED: Honolulu, Hawaiʻi, April 23, 2021.

On the briefs:

Elizabeth Jubin Fujiwara,
Joseph T. Rosenbaum,
(Fujiwara and Rosenbaum, LLLC,
for Plaintiff-Appellant.

Caron M. Inagaki,
Kathy K. Higham,
Deputy Attorneys General,
State of Hawaii,
for Defendants/Third-Party
 Plaintiffs-Appellees.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge